(No. 34404.—
THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* HOWARD ROBINSON, Plaintiff in Error.

*Opinion filed September 18, 1958.*

MOORE, MING & LEIGHTON, of Chicago, (GEORGE N. LEIGHTON, of counsel,) for plaintiff in error.

LATHAM CASTLE, Attorney General, of Springfield, and JOHN R. DEAN, State's Attorney, of Danville, (FRED G. LEACH, and LOUIS B. SUNDERLAND, of counsel,) for the People.

Mr. CHIEF JUSTICE DAILY delivered the opinion of the court:

By separate indictments returned to the circuit court of Vermilion County, the defendant, Howard Robinson, was charged, first, with the unlawful sale of opium, a narcotic drug, to Thomas Foster, and, second, with a similar sale to John McKenzie, Jr. He was tried by a jury under the latter indictment and, when a verdict of guilty was returned, defendant waived a jury trial under the Foster indictment and stipulated that the evidence would be the same under both charges. Thereafter, the court entered a

finding of guilty in the Foster matter and, after denying post-trial motions made in the jury case, entered judgments in both cases and sentenced defendant to serve two concurrent terms of not less than ten nor more than fifteen years in the penitentiary. This writ of error is prosecuted to review the two judgments of conviction.

With respect to both indictments, which charge that the unlawful sales of narcotics were made on March 12, 1956, defendant now contends that the prosecution failed to prove his guilt beyond a reasonable doubt, claiming in particular that the evidence fails to show either a "sale" or that the powder transferred was a narcotic, and that the testimony of Foster, McKenzie and one George Norris, upon which his convictions were largely based, was unworthy of belief. The record reveals that defendant and Foster had been acquainted for approximately a year prior to March, 1956, and that the latter has been a registered narcotics addict since 1951. McKenzie, 29 years old, had known defendant five or six years and had been using heroin two or three times a week over a period of five months. Norris had been acquainted with defendant for nine years and had used heroin about a week before March 12, 1956. At the request of the prosecution, and over the objection of defendant, the witnesses named were called as court's witnesses after the State's Attorney had advised the court that all three were being held on criminal charges, that he believed them unwilling to co-operate, and that, under the circumstances, he felt the prosecution should not be compelled to vouch for the witnesses' veracity and integrity.

Foster, McKenzie and Norris all testified that, although there had been no prearrangement, they were assembled with defendant in the room of Norris at a Danville hotel either late on the night of March 11, 1956, or early in the morning hours of March 12. According to Norris defendant had asked for and received permission to use the room

to "cap up," and it was the testimony of all three that defendant filled a number of capsules with a white power which he had carried in a cellophane container and had processed through a sifter. When this operation was completed, McKenzie, according to his testimony, bought a capsule of the powder from defendant for two dollars and laid the money on a table. Norris confirmed that McKenzie had received a capsule from defendant and, although he stated he saw no money change hands, both he and Foster told of seeing two dollars on the table. Neither professed to know what happened to the money but both agreed that someone had taken it from the table. Foster testified that he, too, got one of the capsules from defendant, promising he would pay two dollars later, that he immediately prepared and used its contents by injecting it into his arm with a needle, and that he then loaned his paraphernalia to Norris who took a similar injection using a capsule obtained from defendant. Norris agreed that he had obtained a capsule from defendant and injected the contents into his arm, but testified that he borrowed the equipment used from McKenzie.

After the events related, the four men went to an eating place for an hour or less, then returned to the vicinity of the hotel. McKenzie left the group to walk home and, on his way, stopped on a creek bridge where he emptied the contents of the capsule he had purchased into an empty cigarette package, then proceeded to inhale the powder through his nose. He further testified that he was familiar with the taste of heroin, which he described as bitter, and in referring to his reaction after using the powder purchased from the defendant, he said: "I got the bitter taste and I got drowsy and spit up a little." Foster and Norris, who had taken their capsules of powder by injection, both described their reactions as being the same as those that had followed their previous use of heroin by injection. An expert witness for the prosecution conceded that some

non-narcotic drugs had the same appearance and taste as heroin, but pointed out that such drugs would not produce narcotic reactions, such as described, and was of the opinion that an addict would get to know a narcotic by its taste. An expert for the defense, however, stated positively that it was not possible for a person to identify a narcotic drug by taste.

Defendant took the stand in his own behalf and, while he admitted knowing his accusers, categorically denied the alleged events of March 11, 1956, or that he had ever sold narcotics to them. The proprietress of the hotel, using a receipt book as a reference, denied that Norris had been a guest in the hotel on March 11, and another witness, for whom McKenzie worked from time to time, contradicted McKenzie's testimony that he had been employed by the witness on the day of the crime. Two witnesses, one of whom was defendant's mother, testified that McKenzie's reputation for truth and veracity was bad and that they would not believe him under oath.

From the record before us we cannot agree with the present claim that there is no evidence establishing either a "sale" by defendant, or that the powder he transferred was in fact a narcotic. With respect to the latter charge defendant's argument to this court assumes that such proof could only be accomplished directly by a chemical test of the powder in question. No authority has been cited in support of such a stringent rule, nor has any been found. On the other hand, leading authorities agree that the general rules of evidence apply in the prosecution of drug and narcotic cases. (17A Am. Jur., Drugs and Druggists, sec. 34; 72 C.J.S., Poisons, sec. 7c.) Judicial notice will be taken that heroin, even when found in a compound, is a derivative of opium. (See: *United States* v. *Pisano*, 193 F.2d 355.) Thus the only issue raised by defendant's assignment of error is whether the proof establishes the powder referred to by the witnesses was heroin. While the

evidence relating to the nature and identity of the powder obtained from the defendant is in part circumstantial, this jurisdiction has long been committed to the principle that a conviction may be based on circumstantial evidence, and it has been broadly stated in many cases that there is no legal distinction between direct and circumstantial evidence as to the weight and effect thereof. (*People* v. *Botulinski,* 383 Ill. 608; *People* v. *Fedora,* 393 Ill. 165; *People* v. *Gavurnik,* 2 Ill.2d 190.) In other words, as is stated in *People* v. *Susanec,* 398 Ill. 507, 513, circumstantial evidence is legal evidence and when it is of such convincing nature that it satisfies the jury of the guilt of the defendant, the verdict must be sustained by the reviewing court .

Circumstantial evidence is indirect proof of the principal facts of a case, which principal facts can only be inferred from one or more circumstances directly established. In the instant case it was directly established that three persons, all acquainted with the preparation and use of narcotic drugs, saw defendant process a white powder using methods and paraphernalia commonly used in the preparation of narcotic drugs for sale. Additionally the record establishes that all three occurrence witnesses thought they were receiving heroin from defendant and each used procedures and paraphernalia commonly used to introduce narcotic drugs into the body. Apart from these aspects which tend to show indirectly that the powder was heroin, there is direct evidence which supports the jury's conclusion. McKenzie testified that he got the distinctive bitter taste of heroin when he inhaled the powder, and all three of the principal witnesses related that their physical reactions from the use of the powder obtained from defendant were the same as the reactions which had followed their previous use of heroin. That the reactions described were narcotic reactions was verified by the prosecution's expert who also testified that an addict would come to know a narcotic by its reaction. Insofar as intoxicating liquor (see: *People*

v. *Olive,* 248 Ill. App. 220, *People* v. *Madruh,* 226 Ill. App. 27), or poisonous drugs (see: *State* v. *Buck,* 88 Kans. 114, 127 Pac. 631; *State* v. *Hyde,* 234 Mo. 200, 136 S.W. 316), are concerned, courts have recognized that lay or inexpert witnesses may have, by use, observation, or experience, sufficient knowledge of the appearance, odor, taste, characteristics and effect of intoxicating liquor or drugs to enable them to identify and distinguish them. By analogy, we think it feasible that a narcotic addict would, as the People's expert testified, come to know a narcotic drug by its reaction upon him. From a consideration of all the evidence, direct and circumstantial, it is our opinion that both the jury and the court were justified in finding that the powder in question was a narcotic drug as charged in the indictments.

Defendant's further claim, *viz.,* that the proof fails to show a "sale" of the narcotic is likewise without merit. A reference to our Criminal Code reveals that section 1(10) of the Uniform Narcotic Drug Act, then in effect, (Ill. Rev. Stat. 1955, chap. 38, par. 192.1(10),) provides that the term "sale," as used in the act, shall have the following meaning: " 'Sale' includes barter, exchange, or gift, or offer therefor, and each such transaction made by any person, whether as principal, proprietor, agent, servant, or employee." Under the definition of our statute, therefore, as is true under the Federal Narcotics Act (see annotations in 39 A.L.R. 240; 13 A.L.R. 864,) a mere gift, a simple offer or agreement to sell, or the delivery to one who has agreed to purchase, constitutes a sale of narcotics, notwithstanding the fact that no consideration is paid, or that the sale is not fully completed by payment of the agreed price. No further repetition or analysis of the evidence already stated is necessary to reach a finding that the proof discloses separate "sales" of narcotics, within the contemplation of the act, to both McKenzie and Foster.

As a final basis for his claim that he was not proved guilty beyond a reasonable doubt, defendant attacks the credibility of McKenzie, Foster and Norris and urges that their testimony is entitled to little weight. In a criminal case, however, it is the function of the jury to weigh the evidence and determine the credibility of the witnesses, and this court will not reverse a judgment of conviction on the ground that the evidence is insufficient to sustain the finding of guilt unless there is reasonable and well-founded doubt of the guilt of the accused and the verdict is found to be palpably contrary to the weight of the evidence. (*People* v. *Prohaska,* 8 Ill.2d 579.) Relying upon *People* v. *Gilbreath,* 1 Ill.2d 306, defendant insists that the suspicions which attach to the testimony of accomplices are sufficient to create reasonable doubt as to his guilt. Assuming, but not deciding, that McKenzie, Foster and Norris were in fact accomplices to defendant's crime, it is sufficient to point out that the aspects which cast an unfavorable light on the testimony of an accomplice in the *Gilbreath case* are not here present. The witnesses in the instant case, under rigid cross-examination, corroborated each other in all material aspects and in minor details. Also, unlike the *Gilbreath case,* there was no affirmative proof that the witnesses intended to accuse the defendant falsely, and the facts and events to which they testified are neither implausible nor uncertain. We are unable to say that the record in this case indicates a reasonable doubt of guilt as to either indictment.

Defendant next insists it was prejudicial error for the court to call as court's witnesses three of the four witnesses for the prosecution. Since *Carle* v. *People,* 200 Ill. 494, it has been the established law of this State that where the State's Attorney, for a sufficient reason shown to the court, doubts the integrity or veracity of a witness, he is not required to call him as a witness for the People and

vouch for his testimony, but such witness may be made the court's witness and cross-examined by either side. (*People* v. *Hundley,* 4 Ill.2d 244.) The purpose of this rule is to prevent a miscarriage of justice by having an eyewitness to a crime, for whose veracity neither party will vouch, fail to testify. (*People* v. *Cardinelli,* 297 Ill. 116.) But such witness should be an eyewitness to the crime, (*Carle* v. *People,* 200 Ill. 494,) and the cross-examination should be restricted to the direct issues and not permitted on collateral matters. (*People* v. *Cleminson,* 250 Ill. 135; *People* v. *Johnson,* 333 Ill. 469.) In the present case it is not contested that the State's Attorney had ample and reasonable grounds for doubting the integrity and veracity of the witnesses McKenzie, Foster and Norris, and it is manifest from the record that, without their testimony, justice might not otherwise have been accomplished. (See: *People* v. *Banks,* 7 Ill.2d 119.) Defendant's contentions are, rather, that too many court's witnesses were called, and that the cross-examination exceeded proper bounds when the court permitted the witnesses to testify concerning their addiction and prior reactions to narcotic drugs.

No authority or specific argument is advanced for the proposition that it was error for the court to call three out of four of the prosecution's witnesses and we doubt that any exists. (See: *People* v. *Rardin,* 255 Ill. 9, at 17, approving the action of the trial court in calling three eyewitnesses as court's witnesses.) Since the object of the rule is to prevent a miscarriage of justice when the need arises, it is manifest that no inflexible rule can be formed. The employment of the practice must, rather, be left to the discretion of the trial court, such discretion to be governed by the circumstances of the particular case and to be exercised within the limits fixed by the *Carle case* and the decisions which have followed it. The record in this case pre-

sents the extreme and unusual situation where the State's Attorney had ample reason to doubt the veracity, integrity, and co-operation of all three eyewitnesses to defendant's crime. Since they were the only occurrence witnesses, it is manifest that their failure to testify would have resulted in a complete failure of justice. We may consider too that justice would demand corroboration of an accuser where such corroboration is known to be available and that a defendant, who may cross-examine such witnesses freely, has the added advantage of discrepancies or contradictions that would not appear if the practice was limited to the calling of but one court's witness. Under the circumstances, we find no abuse of discretion in this case.

Nor do we concur in the contention that the cross-examination of the witnesses exceeded proper bounds. One of the principal issues in the case was whether or not the powder received by the witnesses from the defendant was in fact a narcotic as charged in the indictment. Particularly, since there was no direct expert proof or analysis of the powder, it is apparent that the testimony of the witnesses concerning their narcotic addiction and reactions was not injected as a collateral matter but related directly to their ability to identify the powder in question. We thus see no merit to the contention that the scope of the cross-examination exceeded the issues involved. Additionally, we note that defendant did not in all instances object to the questioning now complained of and that defendant himself cross-examined the witnesses, though not extensively, concerning their previous use of narcotics.

Defendant advances the further contention, with respect to his conviction under the McKenzie indictment, that the trial court erred in its refusal to give his jury instructions numbered 3, 7, 8 and 9. Instruction number 3 advised the jury that McKenzie, Norris and Foster, naming them, had been called as court's witnesses at the request

of the prosecution and stated that such a practice was followed under our law "when the party making the request shows that it cannot vouch for the truthfulness or veracity of the witness." While the observation is made in *People* v. *Baker*, 8 Ill.2d 522, 524, that a defendant may tender a limiting, qualifying or cautionary instruction as to the status of a court's witness, it is our opinion that the instruction tendered in this case was properly refused. When a witness is called by the court he is neither a witness for the prosecution nor the defense, nor does the fact that he is called by the court at the request of a party act as a challenge to his truthfulness and veracity. (*Carle* v. *People*, 200 Ill. 494, 504.) Neither party is required to vouch for the credibility of such a witness, although both are permitted to cross-examine him on equal terms, nor are they prevented from impeaching him. (*People* v. *Rotello*, 339 Ill. 448, 453; *People* v. *Bote*, 379 Ill. 245.) As drawn, the present instruction only partially states the law and ignores these principles in that it implies that the summoning of a witness by the court raises a challenge as to the truth and veracity of the witness, and in that it unfairly saddles the requesting party alone with the consequences of such challenge. Moreover, it would appear that the singling out of the court's witnesses by name was erroneous in this case in view of further instructions which gave the jury general directions for determining the credibility of witnesses and which cautioned the jury to carefully examine the testimony of both accomplices and narcotic addicts.

Instructions 7, 8 and 9, all in the same language but each specifically naming a different witness called by the court, stated that if the jury found such witnesses were induced to testify by promises of immunity from punishment or hope of leniency, then the jury should take such facts into consideration in determining the weight to be given their testimony. These instructions unnecessarily

singled out the testimony of the individual witnesses, a practice repeatedly condemned by this court. *People* v. *Thomas,* 393 Ill. 573; *People* v. *Campbell,* 234 Ill. 391; *Waters* v. *People,* 172 Ill. 367.

Objection is also made by defendant to People's instruction number 4 which was as follows: "The jury are instructed that it is necessary that the time of the offense should be alleged in the indictment, but it is not generally necessary to prove the time as layed. It is enough if some time is proved before the date of the indictment and within the period set by the statute of limitations, which is three years." Defendant gives no valid reason for his objection to this instruction, which has been approved in *People* v. *Crowe,* 390 Ill. 294, and *People* v. *Olroyd,* 335 Ill. 61, but, seeking to find some application for *People* v. *Rivas,* 5 Ill.2d 556, directs his argument toward a claim of an alleged variance between the indictment and the proof as to the date of the crime which "possibly misled" him in preparing his defense. The indictment charged that the crime tried by the jury was committed on March 12, 1956, and the testimony of all the witnesses established the time of the unlawful sale as being either in the late night hours of March 11, 1956, or the early morning hours of March 12, 1956. We see in these circumstances neither a fatal variance nor chance for defendant to be misled. While it is true defendant was under separate charges of having sold narcotics to both Foster and McKenzie on March 12, 1956, by his own stipulation of evidence in the Foster case he admitted that the facts were the same in each case. It follows that he was not misled by the indictments.

People's instruction number 8 dealt with circumstantial evidence and is also complained of by defendant on the ground that there was no circumstantial evidence presented to the jury. Our previous comment on the evidence relating to proof of the fact that the powder was a narcotic disposes

338

of this objection. In view of the evidence the instruction was properly given. *People* v. *Fox,* 269 Ill. 300; *People* v. *Ciucci,* 8 Ill.2d 619.

The judgments of the circuit court of Vermilion County are affirmed.

*Judgments affirmed.*