THE STATE OF OHIO, APPELLEE, *v.* MAUPIN, APPELLANT.

[Cite as State v. Maupin (1975), 42 Ohio St. 2d 473.]

474

(No. 74-354—Decided June 25, 1975.)

*Mr. Simon L. Leis, Jr.,* prosecuting attorney, and *Mr. Joseph G. Carr,* for appellee.

*Mr. James Allen Crary* and *Mr. Allen Brown,* for appellant.

STEPHENSON, J. Appellant's assertions of error in this appeal relate (1) to the introduction of the rebuttal testimony of Sergeant Allen, (2) to a claimed refusal of the trial court to give proper limiting instructions to the use by the jury of the evidence of marijuana found in the May 25th search, and (3) to the instruction in response to the jury's indication of difficulty of agreeing upon a verdict.

Appellant's initial argument is that the admission of the rebuttal testimony in question was prejudicially erroneous. Such argument is premised, basically, upon the following grounds: (1) The substance found in the May 25, 1971, search and identified by Sergeant Allen as marijuana was not brought into court and introduced in evidence, (2) scientific analysis is required for the proper identification of marijuana and (3) such rebuttal testimony was intro-

duced by the state for the purpose of showing appellant's bad character and reputation by a specific act committed after the time of the offense for which he was being tried.

The contention that the oral testimony as to the substance found is precluded unless the substance is brought into court and introduced in evidence is without merit. It is a rule of practically universal application that the best evidence rule is without application to proof of the nature, appearance or condition of physical objects; that such facts may be proved by parole evidence without their physical production in court or explanation of their non-production. 32A Corpus Juris Secundum 101, Section 782; 1 Underhill's Criminal Evidence (6 Ed.) 243, Section 103; 21 Ohio Jurisprudence 2d 275, Section 257. See 4 Wigmore on Evidence (Rev. Ed.), 419, Section 1181.

The rule has been applied in Ohio. *Napolet* v. *Bd. of Liquor Control* (1953), 67 Ohio Law Abs. 108, 119 N. E. 2d 93. Outside Ohio, it has been applied in drug-violation prosecutions. *Francis* v. *United States* (1956), 239 F. 2d 560; *People* v. *Marinos* (1968), 260 Cal. App. 2d 735, 67 Cal. Rptr. 452; *United States* v. *Gregorio* (1974), 497 F. 2d 1253; *United States* v. *Irion* (1973), 482 F. 2d 1240; *Straub* v. *United States* (1965), 351 F. 2d 304.

We also reject appellant's assertion that the parole identification of the substance found in the May 25th search was inadmissible for the reason that no chemical or scientific analysis was made of such substance. There is a serious question as to the sufficiency of appellant's objection in the record to preserve the question for review. However, resolving the question in favor or appellant, he still cannot prevail.

By reason of its availability to prosecuting authorities, its reliability and persuasiveness to juries, the utilization of expert testimony based upon scientific testing is the traditional approach to drug identification. By the same token, there are a substantial number of authorities judicially approving drug identification other than by scientific analysis. *Slettvet* v. *State* (Ind. 1972), 280 N. E. 2d 806;

*Pettit* v. *State* (Ind. 1972), 281 N. E. 2d 807; *Locklayer* v. *State* (Ind. 1974), 371 N. E. 2d 868; *Edwards* v. *Commonwealth* (Ky. App. 1973), 489 S. W. 2d 23; *People* v. *Galfund* (1968), 267 Cal. App. 2d 317, 72 Cal. Rptr. 917; *United States* v. *Gregorio, supra* (497 F. 2d 1253); *People* v. *Robinson* (1958), 14 Ill. 2d 325, 153 N. E. 2d 65; *People* v. *Marinos, supra* (260 Cal. App. 2d 735); *State* v. *Hutton* (1972), 7 Wash. App. 726, 502 P. 2d 1037; *White* v. *Commonwealth* (Ky. App. 1973), 499 S. W. 2d 285.

Although it would appear beyond question that a drug may be identified circumstantially, it is also logically recognized that whether a given substance is or is not as claimed (here, marijuana), is beyond the common experience and knowledge of juries and that expert testimony in some form is required. *State* v. *Johnson* (1972), 54 Wis. 2d 561, 196 N. W. 2d 717; *People* v. *Kenny* (1972), 30 N. Y. 2d 154, 282 N. E. 2d 295; *Slettvet* v. *State, supra; State* v. *Hutton, supra.* This court has recognized the indispensability of expert testimony in civil cases where determinations involve knowledge not ordinarily possessed by laymen. *McKay Machine Co.* v. *Rodman* (1967), 11 Ohio St. 2d 77; *Tully* v. *Mahoning Express Co.* (1954), 161 Ohio St. 457.

The qualification of an expert is a matter for determination by the court on the facts, and rulings with respect to such matters will ordinarily not be reversed unless there is a clear showing that the court abused its discretion. *Akron* v. *Pub. Util. Comm.* (1966), 5 Ohio St. 2d 237; *Ohio Turnpike Comm.* v. *Ellis* (1955), 164 Ohio St. 377.

Expert testimony by addicts experienced in drug use has been upheld. *Pettit* v. *State, supra* (281 N. E. 2d 807); *Edwards* v. *Commonwealth, supra* (489 S. W. 2d 23); *United States* v. *Gregorio, supra* (497 F. 2d 1253); *State* v. *Johnson* (1972), 54 Wis. 2d 561, 196 N. W. 2d 717. Casual drug use, however, is insufficient for qualification as an expert. *People* v. *Kenny, supra* (30 N. Y. 2d 154); *People* v. *McLean* (1961), 56 Cal. 2d 660, 365 P. 2d 403. Likewise, expert testimony has been held properly admitted from experienced police officers. *State* v. *Johnson* (1971), 13 N. C.

App. 323, 185 S. E. 2d 423; *People* v. *Marinos, supra* (260 Cal. App. 2d 735); *Carter* v. *State* (1960), 144 Colo. 475, 357 P. 2d 93; *Miller* v. *State* (1959), 168 Tex. Crim. 570, 330 S. W. 2d 466.

In 23 Corpus Juris Secundum 408, Section 864, the following is stated as to marijuana identification by police officers:

"Marijuana, not being an extract or preparation difficult or impossible to characterize without chemical analysis, but consisting of the dried leaves, stems, and seeds of a plant which anyone reasonably familiar therewith should be able to identify by appearance, it is not error to permit officers who have had experience in searching for and obtaining marijuana to testify that a certain substance is marijuana; and other police officers have also been held qualified so to testify."

The record discloses that Officer Allen had served on the vice squad of the city of Cincinnati for 14 years. Additionally, he had worked for a year and a half as an undercover agent for the Federal Bureau of Narcotics; he had made hundreds of arrests, including those for the possession and use of marijuana; and in the course of past drug investigations he had occasion to see and observe marijuana.

In light of the evidence, we conclude that no abuse of discretion was committed by the trial court in admitting Sergeant Allen's testimony.

Appellant's final contention that the rebuttal testimony in question was introduced for the purpose of showing appellant's bad character, subsequent to the offense charged and by specific acts, is likewise rejected. Appellee contended, both in the trial court and upon appeal, that such testimony was offered as evidence bearing upon appellant's credibility. On direct examination, appellant testified that he had no marijuana in his home in all of May 1971.

As the United States Supreme Court observed in *Harris* v. *New York* (1971), 401 U. S. 222, a criminal defendant is privileged to testify in his own behalf or refuse to

do so. If he takes the stand he is under an obligation to speak truthfully and accurately. We hold that the rebuttal *at least* was properly admitted as bearing on appellant's credibility.[2]

Finally, we observe, with respect to the admissibility of such testimony, that since appellant, in effect, and for strategic reasons, stipulated introduction of the search warrant bearing the disclosure that marijuana was found in the May 25th search, any error in the introduction of the oral testimony could not have prejudiced the appellant.

Appellant's remaining contention with respect to the rebuttal testimony is that the court failed to give limiting instructions with respect to its use by the jury. A limiting instruction presupposes the evidence is properly before the jury for some purpose. The only requested instruction not given was that, set forth above, wherein counsel noted a special exception to the charge. That request, in effect, would have the jury instructed that because the marijuana was not identified as such to disregard the evidence completely upon whether appellant possessed marijuana. For the reasons set forth herein, such request was properly refused.

Aside from the above request, the record is silent as to any other requests limiting the use of that evidence. Such absence forecloses appellate review.

This court has consistently and uniformly held that an appellate court will not consider any error which counsel for a party complaining of the trial court's judgment could have called, but did not call, to the trial court's attention at a time when the error could have been avoided or corrected by the trial court. The decisions of this court applying that principle are enumerated in *State* v. *Gordon*

[2]The evidence respecting the marijuana found in the May 25th search was presented to the jury without limiting instructions as to its purpose or use. We deem it unnecessary to decide whether, as appellant now claims, limiting instructions should have been given, for, as will subsequently be seen, no such request was made to the trial court.

482

(1971), 28 Ohio St. 2d 45, in which the court applied the rule to a claim of the failure of the trial court to give limiting instructions when no request for it appeared in the record.

Appellant next asserts that the verdict returned by the jury was the result of coercion induced by the supplemental instruction,[3] which appellant describes as an "Allen or dynamite charge," urging the jury to reach a verdict. Appellant's challenge is two-fold. It is argued that the wording of the instruction is itself coercive and, also, that it is coercive by prematurity in its timing. The term, "Allen charge," derives from *Allen* v. *United States* (1896), 164 U. S. 492, wherein a supplemental instruction respecting jurors' duties in attempting to reach a verdict was approved.[4] Although *Allen* has never been overruled or modified

―――――――――

[3]The supplemental instructions read as follows:

"The Court: Ladies and gentlemen of the jury: The court is advised that you have indicated difficulty in reaching a verdict. Now, the court suggests to you that since the trial of this case means a great deal to the parties and to the public, and has been expensive in time, effort, and money, the court urges you to make every reasonable effort to agree on a verdict.

"You may consider that this case must at sometime be decided, and that you were selected in the same manner and from the same source from which any future jury must be selected.

"There is no reason to suppose that the case will ever be submitted to twelve individuals more intelligent, more impartial, or more competent to decide it, or that additional evidence will be produced by either side.

"It is your duty to make every reasonable effort to decide the case if you can conscientiously do so. The court instructs you to return to the jury room and continue your deliberations."

[4]The Supreme Court, at page 501, summarized the instruction in *Allen* thusly:

"* * * that in a large proportion of cases absolute certainty could not be expected; that although the verdict must be the verdict of each individual juror, and not a mere acquiescence in the conclusion of his fellows, yet they should examine the question submitted with candor and with a proper regard and deference to the opinions of each other; that it was their duty to decide the case if they could conscientiously do so; that they should listen, with a disposition to be convinced, to each other's arguments; that, if much the larger number were for con-

by the United States Supreme Court, it has been increasingly criticized.[5] The principle and most frequent reason advanced is that it lacks balance; that the thrust of the *Allen* instruction is directed to the minority jurors only and is potentially coercive upon them to agree with those jurors constituting the majority. *State* v. *Patriarca* (R. I. 1973), 308 A. 2d 300; *State* v. *Marsh* (1971), 260 Ore. 416, 490 P. 2d 491; *Fields* v. *State* (Alas. 1971), 487 P. 2d 831; *United States* v. *Fioravanti* (1969), 412 F. 2d 407; *United States* v. *Bailey* (1972), 468 F. 2d 652.

The second difficulty judicially noted with *Allen* arises from modification and variations, with resultant appeals, in language utilized by trial courts which either omits parts of the *Allen* charge which tend to avoid any coercive effect or the utilization of language which has the effect of enhancing its potential for coercion. *E. g.*, "you have got to reach a decision in this case," *Jenkins* v. *United States* (1965), 380 U. S. 445; "with that admonition you are directed to continue your deliberations until you arrive at a unanimous verdict," *Fields* v. *State, supra* (487 P. 2d 831); omission from the instruction that no juror should yield his conscientious convictions, *United States* v. *Rogers* (1961), 289 F. 2d 433; imputations of stubbornness to minority jurors, *Green* v. *United States* (1962), 309 F. 2d 852.

Although this court has expressed views in *Davis* v. *State* (1900), 63 Ohio St. 173, similar to those set forth by the United States Supreme Court in its reasoning ap-

---

viction, a dissenting juror should consider whether his doubt was a reasonable one which made no impression upon the minds of so many men, equally honest, equally intelligent with himself. If, upon the other hand, the majority was for acquittal, the minority ought to ask themselves whether they might not reasonably doubt the correctness of a judgment which was not concurred in by the majority."

[5]Listing of jurisdictions wholly abandoning the *Allen* charge or adopting in its place the ABA Standards Relating To Trial By Jury, Sec. 5.4, may be found in *State* v. *Martin* (1973), 297 Minn. 359, 211 N. W. 2d 765; *People* v. *Sullivan* (1974), 392 Mich. 324, 220 N. W. 2d 441. The federal circuits are summarized in *United States* v. *Bailey* (1972), 468 F. 2d 652, 667.

proving charges with respect to the duty of each juror to decide the case, but only after conferring with and listening to the views of other jurors, the original *Allen* charge has never been a part of Ohio jurisprudence. The supplemental instruction considered here, which bears little resemblance to the pure *Allen* charge, is essentially that approved by the Circuit Court of Franklin County in *Andrews* v. *State* (1912), and *Huffman* v. *State*, 15 C. C. (N. S.) 241, 252. Exceptions were taken and appealed to this court by the Attorney General and the prosecuting attorney from decisions of the Court of Common Pleas in *Huffman*. *State* v. *Huffman* (1912), 86 Ohio St. 229. Although the paragraph by Justice Brown in *Allen* as to the duties of jurors is fully set forth in *Huffman*, *Huffman* related only to *voir dire* examination of jurors.

Here, in holding the supplemental instruction to be noncoercive, the Court of Appeals properly noted the phraseology included therein that "it is your duty to make every reasonable effort to decide the case *if you can conscientiously do so.*" (Emphasis added.) Equally important, in our view, is the following portion of the charge to the jury:

"Consult with one another, consider each other's views, and deliberate with the objective of reaching an agreement if you can do so without disturbing your individual judgment.

"Each of you must decide this case for yourself. But you should do so only after a discussion and consideration of the case with your fellow jurors. Do not hesitate to change your opinion if you are convinced that it is wrong. However, you should not surrender honest conviction in order to be congenial or to reach a verdict solely because of the opinion of other jurors."

We conclude that the supplemental instruction is without the coercive effect appellant asserts. First, because it was an instruction directed to *all* members of the jury, it was neutral. Secondly, it is difficult to perceive how the jury might interpret the instruction as a direction to reach

a verdict by the surrender of conscientiously held views when they had been expressly instructed in the general charge not to surrender honest convictions because of the opinion of other jurors, and, additionally, instructed to decide the case only if they could conscientiously do so. In concluding the instruction noncoercive, we have given consideration to appellant's specific complaint to that part of the instruction stating, "this case must at some time be decided."

In deciding *Allen*, the court recognized derivation of the instruction as being from *Commonwealth v. Tuey* (1851), 62 Mass. 1. However, in *Tuey*, as here, and apparently unlike *Allen*, the jury was informed that the case must at sometime be decided. Recognizing that such statement, if interpreted to mean a future jury either *must* convict or acquit, was technically inaccurate, the *Tuey* charge was recently modified by the Supreme Judicial Court of Massachusetts in *Commonwealth v. Rodriquez* (1973), 300 N. E. 2d 192, to eliminate such statement. It described the misstatement as a "slight one," and held the instruction containing it to be nonprejudicial. We agree. Other courts have recognized the undesirability of such phraseology, although holding its use to be nonprejudicial. *United States v. Gordon* (1952), 196 F. 2d 886; *United States v. Barnhill* (1962), 305 F. 2d 164. In *Fulwood v. United States* (1966), 369 F. 2d 960, Justice Burger, now Chief Justice, at page 963, stated, with reference to an instruction that "some jury sometime will have to decide this case," followed by wording the court hoped they would be able to do so, the following:

"* * * The statement that some other jury would have to decide the case if this one could not was accurate as a generality and, in any event, could have had no coercive impact on the jury. If they already knew what would likely happen if they deadlocked, it was surplusage; if they did not know, this information, far from being coercive, would have had the effect of reducing the pressure on them to reach a verdict."

However, in *United States* v. *Harris* (1968), 391 F. 2d 348, such an instruction was held prejudicial where the jury was also informed that a previous jury was unable to agree.

The remaining aspect of appellant's attack upon the supplementary instruction rests upon the assertion that it was prematurely given. Appellant concedes the fundamental rule that when an instruction shall be given rests in the discretion of the court, claiming, however, that discretion was abused here.

Instructions urging the jury to reach a verdict, proper and noncoercive, may, under given circumstances and conditions, be deemed coercive. Timing is a relevant consideration, 100 A. L. R. 2d 177, 208, Section 7. Other than the complaint as to time and the wording of the instruction, appellant urges no other circumstances present that were potentially coercive. We note the absence of any aggravating circumstances, such as inquiry as to the numerical division of the jury which the United States Supreme Court held coercive per se in *Brasfield* v. *United States* (1926), 272 U. S. 448, the fixing of any set time limit for further deliberations condemned in *Goff* v. *United States* (1971), 446 F. 2d 623; *Burroughs* v. *United States* (1966), 365 F. 2d 431, or the giving of the instruction at a late hour to a tired and exhausted jury.

In retrospect, it may have been sounder judgment to defer giving the supplemental instruction. It is apparent, however, from the initial statement in the supplemental instruction, that the *jury* had advised the court that it was having difficulty in reaching a verdict. The method of communication with the court, however, was not disclosed in the record. Courts in similar circumstances, and where the jury had deliberated a lesser period of time than here, have forthwith proceeded to give supplemental instructions, and such action has been upheld. In *United States* v. *Barnhill, supra* (305 F. 2d 164), where after only one-half hour deliberation, the jury advised the court that it was deadlocked and the court gave a supplemental instruction,

it was stated, at page 165, that such "was a normal and proper way to handle the matter," and that "the shortness of the time interval was the action of the jury, not chargeable to the trial judge." In *United States* v. *Hynes* (1970), 424 F. 2d 754, the jury advised the court shortly before lunch that it was deadlocked after deliberation of two hours and forty-five minutes. After lunch, a supplementary, basically *Allen*, instruction was then given by the court. A claim of prematurity was rejected and the conviction affirmed even though the jury returned a guilty verdict five minutes after the supplemental instruction was given.

In *Andrews* v. *United States* (1962), 309 F. 2d 127, supplemental instructions were held proper when given after only one hour and five minutes, with no communication from the jury it was unable to agree. Likewise, in *United States* v. *Martinez* (1971), 446 F. 2d 118, with no prior communication from the jury and without any request of counsel, the giving of supplemental instructions was held not to be unduly coercive or an abuse of discretion, after about three hours of deliberation following a three-day trial.

Giving consideration to the simplicity of the issues for jury determination, the neutral and noncoercive language of the jury instruction, and in light of other attendant circumstances, we conclude it to be speculative, at best, that the timing of the instruction had such a coercive effect upon the jury that it forced an agreement that would not have otherwise been reached. Hence, we hold that no abuse of discretion occurred.

For the foregoing reasons, the judgment of the Court of Appeals is affirmed.

*Judgment affirmed.*

O'NEILL, C. J., HERBERT, CELEBREZZE and P. BROWN, JJ., concur.

STERN and W. BROWN, JJ., dissent.

STEPHENSON, J., of the Fourth Appellate District, sitting for CORRIGAN, J.

STERN, J., dissenting. The apparent holding of the court today is that the state may prove that a substance is a drug solely on the basis of the testimony of an expert witness that the substance looked like a drug, even though the police have actual custody of the substance itself and no reason is given why a definite chemical test could not be performed. Such a sweeping dismissal of the need for positive proof is neither warranted by the facts of this case nor is it supported by the authorities cited by the majority. For that reason, and because I believe the defendant was unfairly prejudiced by the state's rebuttal testimony, I would reverse the judgment and remand the cause for a new trial.

The majority opinion states in dicta that drug identification may be proved circumstantially and without expert testimony based upon scientific analysis. Standing alone, this statement is not objectionable, for in many cases circumstantial evidence will be both substantial as proof and be the only evidence available. Many of the cases cited by the majority, for example, involve prosecutions for sale of narcotics where a frequent drug user actually took the drug and was sufficiently expert to make an identification. *E. g., People* v. *Robinson* (1958), 14 Ill. 2d 325, 153 N. E. 2d 65; *United States* v. *Gregorio* (C. A. 4, 1974), 497 F. 2d 1253. Cf. *State* v. *Hutton* (1972), 7 Wash. App. 726, 502 P. 2d 1037.

In others, circumstantial evidence was held sufficient when the substance itself was excluded from evidence, *People* v. *Galfund* (1968), 267 Cal. App. 2d 317, 72 Cal. Rptr. 917, or had been thrown away by the defendant and lost. *People* v. *Marinos* (1968), 260 Cal. App. 2d 735, 67 Cal. Rptr. 452. In these cases, the testimony of a properly qualified expert has been held to be sufficient identification. But none of the cases cited by the majority support the argument that expert testimony can replace an actual scientific test when the substance in question is in the custody of the police, and when no adequate reason is given why it should not be positively identified.⁶ (See *State* v.

---

⁶The only case cited in which the best evidence rule is considered

*Ciesieleski* [1964], 18 Ohio App. 2d 85, 247 N. E. 2d 321.)
Conceivably, the effect of the majority opinion could even
be taken to mean that the police need not perform any tests
on purported drugs and need not preserve a seized sub-
stance once they have decided to their own satisfaction that
it is a narcotic drug.

If the court's opinion applies only to identification of
marijuana, I would require more proof than a quote from
Corpus Juris Secundum that marijuana is so unmistakable,
in all its forms, that expert testimony can be an adequate
substitute for scientific tests, or that if tests are to be car-
ried out, the burden lies on the defendant to do so for re-
buttal, assuming he is even afforded such an opportunity.

If the majority opinion is based upon a procedural
distinction between evidence introduced as part of a case
in chief, and that introduced for rebuttal, I must also dis-
agree. Here, one sample of marijuana was properly identi-
fied by chemical tests and admitted in evidence as part of
the state's case in chief. The dispute in this case is whether
the rebuttal testimony of a police officer that he saw the
contents of a pouch, seized by the police in defendant's
apartment on May 25th, was sufficient as identification evi-
dence to prove the contents to be marijuana. That testi-
mony was offered solely for the purpose of challenging
the credibility of the defendant's testimony, since the de-
fendant is not here charged with any offense arising out
of the May 25th incident. Defendant testified that he had
no marijuana in his apartment during May. If the sub-
stance in the pouch was marijuana, it would rebut that

---

with respect to drug identification is *Francis* v. *United States* (C. A. 10,
1956), 239 F. 2d 560. In that case, the issue was whether the testi-
mony of a chemist was sufficient evidence that certain marijuana seeds
were capable of sprouting. The chemist testified that he had raised
seedlings from the seeds, and the objection was that the seedlings them-
selves were the "best evidence." The court properly ruled that the only
real proof as to the results of the experiment was the testimony of the
experimenter himself, since the probative value of any seedlings de-
pended wholly on his testimony and that their admission would only
be cumulative. In the instant case, the issue is the identity of the sub-
stance itself, not one of its properties, and no valid test of any kind
was offered as evidence.

testimony and would be admissible under *Harris* v. *New York* (1971), 401 U. S. 222. If the substance was not marijuana, the rebuttal failed to rebut.

It appears to me that in this case fundamental fairness requires that the identity of the substance be as conclusively proven as in a case in chief. The state's failure to produce evidence in its custody inevitably reduces the possibility of effective cross-examination by the defense. Perhaps even more importantly, the admission of such testimony must strongly influence the jury. Any weak or doubtful case could be propped up by the charge that on a different occasion the defendant committed the same offense. The danger of prejudice from this sort of charge is so great and so apparent that simple fairness requires that the vital evidence of such charge at least be produced in court, and that the limited relevance of such evidence be carefully explained to the jury. The instant case is a clear example. Defendant may very well have been effectively convicted of possession of marijuana, not on the basis of the incident for which he was charged, but because of the testimony of an officer that a particular pouch contained marijuana, based solely upon the observation of that officer, while the pouch itself presumably lay somewhere in the police evidence locker. Simple fairness seems to me to require that the substance itself or a scientific test of it be presented in court, unless some good reason for not producing it is given by the state, regardless of whether as a procedural matter the evidence relates to the state's case in chief or to rebuttal.

For the same reasons, the jury instruction requested by the defendant should have been allowed. That instruction asked both that the jury disregard the rebuttal testimony because of the state's failure to prove the substance to be marijuana, and that the jury not consider the incident on the 25th of May as supportive proof of the charge that the defendant possessed marijuana on the date charged, the 17th of May.

It requires little reflection to see that the admission

in evidence of the testimony as to the May 25th incident could be highly prejudicial. Even assuming that the testimony was admissible at all absent a positive scientific test, the testimony was relevant solely for the purpose of rebuttal. It did not qualify as evidence of a similar act under R. C. 2945.59 and was not substantive evidence of the offense charged. Defendant was entitled to have the jury carefully instructed as to this difficult distinction, and that was substantially the import of the proferred instruction. Indeed, the defendant was entitled to a fuller instruction than was in fact requested, because the dangers of prejudice and confusion were so great.

Both for the admission of the unsupported identification testimony and for the failure to charge the jury as to the limited relevance of that testimony, the conviction in this case should be reversed.

W. BROWN, J., concurs in the foregoing dissenting opinion.