OPINION
Defendant-appellant, Michael D. Baker, appeals his conviction in the Fayette County Court of Common Pleas for corrupting another with drugs. We reverse appellant's conviction.
In July 1994, Detective Jeff McCarty of the Adams County Sheriff's Department was working undercover with a multi-jurisdictional Narcotic Task Force. He went to the Jefferson-Green Apartments in Jeffersonville, Fayette County, to make a purchase of crack cocaine. There were three individuals at the apartment: Michelle Cordell, Julian Eric Gee and appellant. Detective McCarty purchased crack cocaine from Gee.
As McCarty prepared to leave the apartment, Cordell became suspicious because she had not seen McCarty before. Cordell told Gee and appellant she suspected that McCarty was "the man." "The man" is a slang or street term for the police. Cordell asked McCarty if he got high or smoked crack. When he responded that he did not, Cordell became irate. According to McCarty, appellant stated: "You're going to get high or you ain't leaving this house[,] at least on your own power."
Cordell handed McCarty a pipe and a small "rock" of a substance McCarty believed to be crack cocaine. McCarty pretended to place the rock on the pipe, but dropped it on the floor. Cordell noticed McCarty dropped the rock on the floor and became upset. Appellant told McCarty that "he was getting tired of the games" and McCarty was "going to smoke the rock." McCarty turned away from Cordell and appellant. He held a flame to the rock until it turned black and pretended to smoke it. Cordell still did not believe McCarty smoked the rock since she did not see him exhale any smoke.
McCarty stated that he pretended to smoke the rock again and then tried to leave the apartment. According to McCarty, appellant pushed him down into a chair demanding that McCarty smoke the rock because appellant "was going to see [him] get high." McCarty acquiesced and smoked the rock. McCarty stated that after he smoked the substance his lips turned numb, his throat hurt, his heart raced and his chest felt tight. He felt "woozy."
McCarty left the apartment and drove to a gasoline station where he called his captain to report what happened. McCarty was taken to a doctor; however, no drug screen was performed on him.
Three years later, appellant was charged with one count of aggravated trafficking in drugs and one count of corrupting another with drugs. The state dismissed the aggravated trafficking charge. At the close of the state's case, appellant moved for a judgment of acquittal pursuant to Crim.R. 29. The trial court overruled appellant's motion. A jury adjudicated appellant guilty of corrupting another with drugs. Appellant moved the trial court for a new trial on several bases, including prosecutorial and juror misconduct. The trial court granted appellant a new trial on the basis of juror misconduct. The state appealed and this court reversed the decision of the trial court.[1] See State v. Baker
(Apr. 12, 1999), Fayette App. No. CA98-06-010, unreported. On remand, the trial court sentenced appellant accordingly.
Appellant appeals his conviction and raises eight assignments of error for review. Because we reverse appellant's conviction, we address only his first and second assignments of error. Our decision renders the remaining assignments of error moot.[2]
Assignment of Error No. 1:
THE EVIDENCE WAS INSUFFICIENT TO SUPPORT A CONVICTION.
Assignment of Error No. 2:
 THE TRIAL COURT ERRED BY OVERRULING APPELLANT'S MOTION FOR ACQUITTAL AT THE CLOSE OF THE STATE'S CASE.
In his first and second assignments of error, appellant argues that the trial court erred by overruling his Crim.R. 29 motion because the state failed to produce sufficient evidence to convict him of corrupting another with drugs. Specifically, appellant argues that the state failed to prove that he caused another person to use a controlled substance.
Under Crim.R. 29(A), a court shall not order an entry of judgment of acquittal if the evidence is such that reasonable minds can reach different conclusions as to whether each material element of a crime has been proven beyond a reasonable doubt. State v. Bridgeman (1978),55 Ohio St.2d 261, syllabus. "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt." State v. Jenks,61 Ohio St.3d 259, paragraph two of the syllabus. After viewing the evidence in a light most favorable to the prosecution, the relevant inquiry is whether any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Id.
Appellant was convicted of corrupting another with drugs in violation of R.C. 2925.02, which states, in relevant part:
No person shall knowingly do any of the following:
 By force, threat, or deception, administer to another or induce or cause another to use a controlled substance * * *.
A controlled substance is any "drug, compound, mixture, preparation, or substance included in schedule I, II, III, IV, or V." R.C. 2929.01(A) and 3719.01(C).
According to Detective McCarty, appellant demanded that he "get high" if he wanted to leave the house on his own accord. McCarty testified that appellant forced him to smoke, against his will, a substance that he believed to be crack cocaine.
McCarty was unable to positively identify the substance he was forced to smoke. McCarty never experienced the effects of ingesting crack cocaine. Reflecting on his experience with drug users, McCarty contrasted his experience with their reports of crack use: "[T]he ones that smoke crack all the time say it feels good * * * it didn't feel good to me." McCarty admitted that no one tested the substance he smoked to determine whether it was in fact crack cocaine. Nor did anyone seize the pipe for testing. McCarty admitted that crack cocaine is a substance that cannot be positively identified without testing or analysis.
Ralph Gebhart, M.D. examined McCarty approximately one hour after he smoked the substance. According to Dr. Gebhart, McCarty was "normal" when he observed him. Dr. Gebhart explained that McCarty's appearance of normalcy was probably due to the fact that, in his opinion, the effects of crack cocaine last fifteen minutes to one-half of an hour. Dr. Gebhart did not testify that his examination revealed that McCarty had ingested any substance, much less crack cocaine. Dr. Gebhart made no written report or record of his examination of McCarty. Dr. Gebhart did not test McCarty's blood for the presence of cocaine or any other controlled substance. Dr. Gebhart did not testify whether he performed any other tests to determine whether McCarty ingested any amount of a controlled substance.
McCarty testified that the substance he smoked made his lips turn numb, his throat hurt, his heart race and his chest tight.
In comparison, Dr. Gebhart stated that ingesting cocaine causes a person to become "real super active" and creates "a rush of feeling good and on top of the world for a short while." Alan Witherspoon, Administrative Coordinator to the Multi-jurisdiction Task Force testified that he learned in his training that cocaine ingestion causes a real "rush," extreme heart pounding and a numbing effect.
The state's evidence, if believed, is sufficient to convince the average mind beyond a reasonable doubt that appellant forced McCarty to ingest a substance. However, the evidence, viewed in the light most favorable to the state, is insufficient to prove that appellant forced McCarty to ingest a controlled substance. Other than McCarty's testimony that he was forced to smoke a substance he thought was crack cocaine, there is no evidence that he actually ingested a controlled substance. Dr. Gebhart diagnosed McCarty as "normal" approximately one hour after the alleged ingestion. Dr. Gebhart kept no record of his examination of McCarty and apparently chose not to conduct any tests to determine whether cocaine was present in McCarty's blood or urine.
The state proceeded against appellant pursuant to R.C. 2925.02, a statute that requires as one of its essential elements of proof a specific controlled substance. The possible penalties for violating the statute differ depending upon which schedule of controlled substance the defendant induced or caused the victim to use. See R.C. 2925.02(C).
There are hundreds of substances, mixtures, combinations, preparations listed in Ohio's schedules of controlled substances. See R.C. 3719.41. Generally, it is impossible to ascertain the chemical composition of a substance by merely looking at it, much less by ingesting it. As McCarty himself testified, most substances, including crack cocaine, cannot be positively identified without analysis or testing. This is especially true with controlled substances comprised of white powdery material.
The recognized exception in controlled substance cases is marijuana. A police officer or other person can testify that a substance is marijuana from visual observation because "[m]arijuana, [is] not * * * an extract or preparation difficult or impossible to characterize without chemical analysis [because it consists] of the dried leaves, stems and seeds of a plant which anyone reasonably familiar therewith should be able to identify by appearance * * *." State v. Maupin (1975), 42 Ohio St.2d 473,480.
McCarty's description of how he felt is also insufficient to establish that he was induced or forced to use a controlled substance. McCarty admitted that his experience was quite unlike the descriptions he heard from users of crack cocaine. Dr. Gebhart and Alan Witherspoon both testified that the rapid heartbeat and numbness described by McCarty was consistent with what they believed occurred to people who ingested crack cocaine. However, such evidence is too tenuous to establish beyond a reasonable doubt that the substance McCarty claimed to ingest was crack cocaine. Such physiological symptoms may be consistent with ingesting any number of substances present on, or even absent from, Ohio's schedule of controlled substances.
Causing another person by force, threat or deception to use a controlled substance against his will is a serious and disturbing crime. However, Crim.R. 29 mandates that the trial court shall order a judgment of acquittal when the evidence presented by the state is insufficient to sustain a conviction. The state's evidence in this case was insufficient to sustain a conviction for corrupting another with drugs. The trial court erred by failing to grant appellant's motion for acquittal. The first and second assignments of error are sustained.
YOUNG and VALEN, JJ., concur.
[1] This court granted the state leave to appeal the trial court's decision to grant a new trial pursuant to R.C. 2945.67. See State v.Matthews (1998), 81 Ohio St.3d 375, syllabus (holding "a trial court's order granting the defendant a new trial in a criminal case is a final appealable order which the state may appeal by leave of court"). In contrast, in the absence of a judgment of conviction and sentence, there is no final appealable order from which a criminal defendant can appeal. See, e.g., State v. Lewis (1999), 131 Ohio App.3d 229, 238; State v.George (1994), 98 Ohio App.3d 371, 374. Appellant timely filed the instant appeal from the trial court's journalized judgment entry of conviction and sentence.
[2] Appellant also presents arguments pertaining to the charge of aggravated trafficking in drugs. The state dismissed this charge against appellant. Therefore, any arguments regarding the charge are also moot.