JOURNAL ENTRY AND OPINION
{¶ 1} Defendant-appellant Johnny Titsworth ("defendant") appeals his convictions of drug trafficking, drug possession, tampering with evidence, and possession of criminal tools entered by the Cuyahoga County Court of Common Pleas after a jury found him guilty of the offenses. For the following reasons, we affirm in part, reverse in part and remand for further proceedings.
 {¶ 2} On April 10, 2003, detectives from the Lakewood Police Department, Cleveland Police Department, agents from the West Shore Enforcement Narcotics Task Force, and the Ohio Attorney General's Office set up a "controlled purchase" detail at the Best Hotel, 3614 Euclid Avenue, Cleveland, Ohio. The "controlled purchase" detail involved a confidential informant ("CI") who was going to purchase a large sum of crack cocaine from a suspected drug dealer named Jay in room 1016 of the hotel. The CI was wired with a listening device so that the officers could monitor and record the transaction and given $500 in marked currency.
 {¶ 3} Agent Thomas Verhiley ("Agent Verhiley") of the Ohio Attorney General's Office and Detective Todd Allen ("Det. Allen") of the Lakewood Police Department went to the Best Hotel before the CI to set up the surveillance. They observed a man fitting the description of the suspected drug dealer leave room 1020 and enter room 1016. Agent Verhiley and Det. Allen informed the other surveillance team that two rooms might be involved. Subsequently, a search warrant for both rooms was obtained. Agent Verhiley and Det. Allen went back inside the hotel and took position in the stairwell to wait until they received the signal from the "bug" placed on the CI.
 {¶ 4} Lakewood Vice Detective John Joseph Guzik ("Det. Guzik") drove the CI to the Best Hotel. Prior to her arrival, Det. Guzik patted her down to ensure that she did not have any drugs or money on her person other than the marked currency. Upon entering the lobby of the hotel, an agent stationed inside the lobby informed Det. Guzik that a man, later identified as the defendant, met the CI in the lobby and escorted her to room 1016. Therein, the CI purchased 3.6 grams of a substance later determined to be crack cocaine.
 {¶ 5} After receiving a signal from the CI that the deal was completed, two teams of officers entered rooms 1016 and 1020. Room 1020 was empty. In room 1016, there were three males and four females. Sergeant Terrence Shoulders ("Sgt. Shoulders") of the Cleveland Police Department and Detective Patrick Fiorilli ("Det. Fiorilli") of the Lakewood Police Department ran directly into the bathroom of room 1016 and observed the defendant along with another suspect flushing money down the toilet. Sgt. Shoulders was able to retrieve $450 before it was flushed. The money recovered from the toilet was the same marked currency used for the "controlled purchase."[1]
 {¶ 6} In room 1016, the search team found approximately 100 wax paper baggies. They also found marijuana, a crack pipe, a spoon, three syringes, a handgun, and a shoebox containing a crack pipe, plastic sandwich bags, crack pipe cleaners, syringe caps, and a razor blade. Det. Fiorilli testified that the spoon and wax paper baggies had white residue that appeared to be heroin. Defendant was arrested and taken into custody.
 {¶ 7} On June 18, 2003, defendant was indicted for two counts of trafficking in drugs, in violation of R.C. 2925.03; one count of possession of drugs (crack cocaine), in violation of R.C. 2925.11; one count of possession of drugs (heroin), in violation of R.C. 2925.11; one count of tampering with evidence, in violation of R.C. 2921.12; and one count of possession of criminal tools, in violation of R.C. 2923.24. Defendant was also indicted for two firearm specifications, in violation of R.C. 2925.11.
 {¶ 8} On January 9, 2004, the matter was called to trial and defendant was convicted of all counts except the firearm specifications. On January 23, 2004, defendant agreed to a three year sentence on all counts and waived his appellate rights with regard to his sentence.
 {¶ 9} Defendant appeals his convictions and raises four assignments of error for our review, which will be addressed together where appropriate.
 {¶ 10} "I. The trial court committed an abuse of discretion and deprived the appellant of due process by denying his request to continue the trial."
 {¶ 11} The decision to grant or deny a motion to continue a trial lies within the discretion of the trial court and will not be reversed on appeal unless the trial court has abused its discretion. Burton v. Burton
(1999), 132 Ohio App.3d 473. An abuse of discretion is defined as a decision that is unreasonable, arbitrary or unconscionable, rather than a mere error in judgment. Blakemore v. Blakemore (1983), 5 Ohio St.3d 217. Some of the factors to be considered when determining whether a continuance should have been granted are (1) whether other occurrences have been requested and received, (2) whether the defendant contributed to the circumstances which gives rise to the request for the continuance; and (3) the inconvenience to litigants, witnesses, opposing counsel and the court. State v. Unger (1981), 67 Ohio St.2d 65, 67.
 {¶ 12} Under the circumstances presented in this case, we find that defendant has failed to establish that the trial court abused its discretion by denying his request for a continuance. First, defense counsel requested, and was granted, numerous continuances during the pendency of the proceedings. The pretrial was continued and rescheduled on four separate occasions.[2] The trial was continued and rescheduled from December 12, 2003 until December 17, 2003, at which time the defendant failed to appear for trial. On January 9, 2004, three weeks after the scheduled trial date, defendant turned himself in and the matter was called to trial. Second, defendant contributed to the circumstances which gave rise to the request for a continuance; namely, his failure to appear for the scheduled trial date of December 17, 2003. See Heard v. Sharp (1988), 50 Ohio App.3d 34 (a trial court does not abuse its discretion in denying a motion for a continuance when a party fails to appear at trial without explanation and when there is no indication that the party would attend a later trial if the continuance was granted). Third, defendant cannot show that there was a legitimate reason to delay the trial once again. Defendant's claim that his trial counsel had no reason to anticipate and no opportunity or time to prepare for trial on January 9, 2004 is not supported by the record. Indeed, the trial date was rescheduled for December 17, 2003, three weeks prior, at the request of defense counsel. Based on all of these factors, we cannot say the trial court's decision to deny a continuance was arbitrary, unreasonable, or unconscionable.
 {¶ 13} Defendant's first assignment of error is overruled.
 {¶ 14} "II. The trial court deprived the appellant of effective assistance of counsel by denying his request for a continuance.
 {¶ 15} "IV. The accused was deprived of effective assistance of counsel when the trial court set a fee schedule for court appointed counsel that was inadequate to fairly compensate the court appointed attorney for his time and efforts."
 {¶ 16} In his second and fourth assignments of error, defendant contends that he was denied his constitutional right to effective assistance of counsel.
 {¶ 17} In order for this Court to reverse a conviction on the grounds of ineffective assistance of counsel, we must find that (1) counsel's performance was deficient and (2) that the deficient performance prejudiced the defense so as to deprive the defendant of a fair trial.Strickland v. Washington (1984), 466 U.S. 668, 687. Counsel's performance is deficient if it falls below an objective standard of reasonable representation. State v. Bradley (1989), 42 Ohio St.3d 136, paragraph two of the syllabus. To establish prejudice, "the defendant must prove that there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different." Id. at paragraph three of the syllabus.
 {¶ 18} Defendant first argues that he was denied his constitutional right to effective assistance of counsel when the trial court denied his request for a continuance. We disagree. In the first assignment of error, we held that the trial court did not err in denying defendant's request for a continuance. Thus, defendant's failure to obtain a continuance was not prejudicial and defendant was not rendered ineffective assistance of counsel on that basis. See Bradley, supra.
 {¶ 19} Next, defendant argues that he was prejudiced when his trial counsel was not fairly compensated for his time. Specifically, defendant claims that the fee schedule established by Cuyahoga County does not allow any appointed defense attorney to dedicate sufficient time to the defense of any client, including himself. We disagree. Loc.R 33 establishes a fee schedule for appointed counsel and section (B) of that rule details the procedure for appointed counsel to request more than the fee schedule provides. Here, there is no evidence in the record to show that defendant's trial counsel filed such a motion, along with an affidavit and itemized statement of services rendered, to the trial court. Since defendant's counsel never requested additional counsel fees, defendant cannot show that he was denied effective assistance of counsel on this basis. Ibid.
 {¶ 20} The second and fourth assignments of error are overruled. {¶21} "III. The trial court violated Rule 29 of the Ohio Rules of Criminal Procedure by denying the appellant's request to dismiss the criminal charges against him, at least in relation to his conviction for possession of heroin."
 {¶ 22} Crim.R. 29(A) provides that a trial court "shall order the entry of a judgment of acquittal of one or more offenses charged in the indictment, * * * if the evidence is insufficient to sustain a conviction of such offense or offenses." To determine whether the evidence before a trial court was sufficient to sustain a conviction, an appellate court must view that evidence in a light most favorable to the State. State v.Dennis (1997), 79 Ohio St.3d 421, 430.
 {¶ 23} An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the State, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. State v. Thompkins (1997), 78 Ohio St.3d 380, 386.
 {¶ 24} Here, defendant was convicted of possession and trafficking of heroin. R.C. 2925.11 defines the crime of drug possession as follows:
 {¶ 25} "(A) No person shall knowingly obtain, possess, or use a controlled substance."
 {¶ 26} R.C. 2925.03 defines the crime of drug trafficking as follows:
 {¶ 27} "(A) No person shall knowingly sell or offer to sell a controlled substance."
 {¶ 28} Under both of these statutes, the State was required to prove beyond a reasonable doubt that a controlled substance, in this case, heroin was involved.
 {¶ 29} Generally, suspected controlled substances are tested in a laboratory and the results of those tests are introduced into evidence in the trial of a defendant charged with possession or trafficking of that substance. State v. Maupin (1975), 42 Ohio St.2d 473, 479. Here, there was no laboratory test proving that the white residue found on the spoon and wax paper baggies was heroin.[3] Rather, the evidence presented was merely the testimony of police officers concerning their opinion of what the white residue may have been.[4]
 {¶ 30} Proof of the nature of a controlled substance can be proved by circumstantial evidence such as the testimony of an experienced police officer. Id. However, after a diligent search we have been unable to discover a case where the identification of a substance such as heroin has been proven by police testimony without expert testimony based on a chemical analysis. Rather, the holding in Maupin appears to be limited to police testimony regarding the identification of marijuana. Specifically, the Maupin court noted that "Marijuana, not being an extract or preparation difficult or impossible to characterize without chemical analysis, but consisting of the dried leaves, stems, and seeds of a plant which anyone reasonably familiar therewith should be able to identify by appearance, it is not error to permit officers who have experience in searching for and obtaining marijuana to testify that a certain substance is marijuana; and other police officers have also been qualified so to testify."[5]
 {¶ 31} Upon thorough consideration of the law as summarized above and the relevant testimony, we find that sufficient evidence was not presented from which, when viewed in a light most favorable to the prosecution, any rational trier of fact could have found that defendant possessed or engaged in the trafficking of heroin. The mere fact that a spoon and wax paper baggies were found inside the room, without proof that the white residue found thereon was actually heroin, is insufficient evidence to convict the defendant of the offenses of drug possession and drug trafficking of heroin as defined by R.C. 2925.03 and 2925.11. See, also, City of Bowling Green v. Mt. Castle (Feb. 27, 1998), Wood App. No. WD-97-056 (conviction for possession of drug paraphernalia reversed where there was no evidence that the pipe contained residue from marijuana);State v. Smith (Jan. 7, 1994), Clark App. No. 3013 (conviction for possession of drug paraphernalia reversed where there was no evidence that the pipe contained residue from crack cocaine). Accordingly, we reverse defendant's conviction for possession and trafficking of heroin and enter a judgment of acquittal for defendant on those charges only.
 {¶ 32} At sentencing, defendant agreed to a three-year prison term and knowingly and voluntarily waived his appellate rights as to sentencing.[6] See State v. Butts (1996),112 Ohio App.3d 683 (a criminal defendant may waive the right to appeal a sentence); State v. Kelley
(1991), 57 Ohio St.3d 127 (a post-trial agreement between a criminal defendant and the State is a proper forum to waive all appealable errors). Accordingly, we express no opinion on the impact our decision to vacate defendant's convictions for possession and trafficking of heroin has upon defendant's agreed three-year sentence.
 {¶ 33} Judgment affirmed in part; reversed in part and remanded for further proceedings consistent with this opinion.
It is ordered that appellee and appellant share equally the costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Court of Common Pleas to carry this judgment into execution. The defendant's conviction having been affirmed in part, any bail pending appeal is terminated. Case remanded to the trial court for further proceedings.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Ann Dyke, P.J., concurs.
 Corrigan, J., concurs In part and dissents in part. (See attachedconcurring and dissenting opinion).
[1] The missing $50 was never recovered and was presumed to have been flushed down the toilet.
[2] October 15, 2003, October 20, 2003, November 7, 2003, and November 20, 2003.
[3] Tr. 295.
[4] For example, Det. Fiorilli testified as follows: "This is a spoon, and it has, you'll see it has white residue on it. That will be more than likely heroin." (Tr. 262). Det. Fiorilli also stated the following: "These are empty heroin envelopes. Probably a vast majority of them here have residue of heroin inside them." (Tr. 263).
[5] See, also, Cleveland Metropolitan Park District v. Young (Nov. 25, 1998), Cuyahoga App. No. 74281 (a park ranger with extensive training and experience in law enforcement was qualified to testify as to the authentication and identification of marijuana).
[6] Tr. 411-412.
 CONCURRING AND DISSENTING OPINION