DECISION AND JOURNAL ENTRY
{¶ 1} Appellant, Daniel Bortner, appeals from the judgment of the Lorain County Court of Common Pleas, which convicted him of rape and gross sexual imposition. We affirm.
 I. {¶ 2} On November 28, 2001, Appellant was indicted on one count of rape of a child under the age of thirteen, in violation of2907.02(A)(1)(b), and one count of gross sexual imposition, in violation of R.C. 2907.05(A)(4). Appellant entered a plea of not guilty, and the matter proceeded to jury trial. Appellant was found guilty of both charges.
 {¶ 3} Appellant filed a motion for a new trial, arguing that his counsel was ineffective and that the trial court permitted inadmissible evidence. After a hearing, the trial court denied the motion. Thereafter, Appellant was sentenced to concurrent terms of imprisonment of four years for rape and one year for gross sexual imposition. This appeal followed. Appellant presents five assignment of error for review. For ease of discussion, we will address them in a different order than presented in the brief.
 II. Fourth Assignment of Error
"The jury verdict of guilty was against the manifest weight of the evidence."
 {¶ 4} In his fourth assignment of error, Appellant asserts that his convictions were against the manifest weight of the evidence. A review of the weight of the evidence determines whether the state has met its burden of persuasion. State v. Angle (June 2, 1999), 9th Dist. No. 2875-M, at 7. When a defendant asserts that the conviction is against the manifest weight of the evidence,
"[a]n appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered."State v. Otten (1986), 33 Ohio App.3d 339, 340.
 {¶ 5} Only in the exceptional case, where the evidence presented weighs heavily in favor of the defendant, will the appellate court reverse and order a new trial. Id.
 {¶ 6} Appellant was convicted of rape and gross sexual imposition. R.C. 2907.02 provides:
"(A)(1) No person shall engage in sexual conduct with another who is not the spouse of the offender * * * when any of the following applies:
"* * *
"(b) The other person is less than thirteen years of age, whether or not the offender knows the age of the other person."
 {¶ 7} Sexual conduct is defined as:
"vaginal intercourse between a male and female; anal intercourse, fellatio, and cunnilingus between person regardless of sex; and, without privilege to do so, the insertion, however slight, of any part of the body or any instrument, apparatus, or other object into the vaginal or anal cavity of another. Penetration, however slight, is sufficient to complete vaginal or anal intercourse." R.C. 2907.01(A).
 {¶ 8} R.C. 2907.05 provides:
"(A) No person shall have sexual contact with another, not the spouse of the offender; cause another, not the spouse of the offender, to have sexual contact with the offender; or cause two or more other persons to have sexual contact when any of the following applies:"
"* * *
"(4) The other person, or one of the other persons, is less than thirteen years of age, whether or not the offender knows the age of that person."
 {¶ 9} Sexual contact is defined as:
"any touching of an erogenous zone of another, including without limitation the thigh, genitals, buttock, pubic region, or, if the person is a female, a breast, for the purpose of sexually arousing or gratifying either person." R.C. 2907.01(B).
 {¶ 10} Appellant argues that out of all the witnesses testifying for the state only the alleged victim could testify as to any element of the crimes. He also asserts that the testimony of four other witnesses consisted of merely hearsay statements of the victim, used to bolster the testimony of the victim.
 {¶ 11} The State presented the testimony of eight witnesses. Among those witnesses were the victim, K.A.; her mother, Tina; her sister, C.A.; C.A.'s friend A.S.; A.S.'s father; Detective Ryan Warfield; and Dr. Mary Wynn. At the time the alleged offenses occurred, K.A., C.A., and Tina lived with Appellant and Appellant's daughter Brandy.
 {¶ 12} K.A. testified to the following: Appellant would touch her and kiss her and often brushed her hair. Appellant touched her "chest area," her legs and back, and rubbed her upper thighs. K.A. testified that she heard Appellant sigh as he touched her. One night Appellant took K.A. to the store. Upon returning home, he stopped the truck in the driveway and told K.A. to scoot over. She did, and he began kissing her. Later that evening, Appellant and K.A. were watching television alone, while C.A. was upstairs in her bedroom with a friend. K.A. testified that he told her to get on the floor and put her butt in the air. She stated that it was at this time that Appellant pulled down her pants and put his penis inside her vagina. She stated that she felt something "round" and she felt like she had to go the bathroom. She stated that Appellant moved "back and forth." K.A. testified that she tried to go upstairs, but Appellant pulled her back; she finally got away and went upstairs. She told C.A. that Appellant had touched her, but she did not tell her the details of what happened or that Appellant had raped her.
 {¶ 13} On cross-examination, K.A. stated that she could not remember the exact date of these occurrences, but she did remember that both she and Appellant were wearing shorts. She thought it was in April and that it was "springish"; although when she spoke to the police in August she indicated that it had occurred six months prior. She further admitted that she did not know for sure that it was Appellant's penis that entered her body.
 {¶ 14} Tina testified that Appellant was her ex-boyfriend and that she and her daughters lived with him from November, 2000 until August, 2001. Sometime in March, 2001, the relationship between Tina and Appellant grew sour; however, she and her daughters remained in the house for financial reasons while she saved money to move to Florida. She admitted on cross-examination that originally, she wanted to buy the house that Appellant had been renting; however, she stated that her family in Florida wanted her and her daughters to move there after her relationship with Appellant soured.
 {¶ 15} Tina testified that she became aware of K.A.'s accusations in August, 2001. At that time, she contacted the police and took K.A. for a physical examination. Dr. Wynn is K.A.'s family physician. Dr. Wynn testified that she performed an exam on K.A. and related that she found nothing remarkable in her exam. However, Dr. Wynn testified that K.A. was very apprehensive during the exam, acted scared and upset, and was crying. Dr. Wynn noted that in her career, she has seen approximately thirty cases of sexual abuse, and, in her experience, is it not abnormal for female genitalia to exhibit no signs of physical injury after sexual assault. She also expressed her opinion as to why child sexual abuse victims do not come forward right away; she stated that children try to please adults and often feel guilty over the abuse. She further expressed that in her experience, children often have trouble remembering dates and times.
 {¶ 16} C.A. testified that Appellant was always nice to K.A. and that he often grounded C.A. She further stated that she observed Appellant rubbing K.A.'s legs above the knee. C.A. testified that her sister told her on a couple of occasions that Appellant touched her inappropriately. C.A. also stated that she told her friend, A.S., about Appellant and K.A. A.S. and A.S.'s father both testified to relate that in August, 2001, A.S. told her father about the inappropriate touching and that he then informed Tina.
 {¶ 17} Detective Ryan Warfield is a detective with the Youth Bureau, where he investigates cases where juveniles have been physically or sexually abused. He testified that he had interviewed several hundred child victims of sexual abuse throughout his career. He stated that based upon his experience and education, children often have difficulties with time. He further testified that juvenile abuse victims often delay disclosing the abuse due to fear or embarrassment and often the victims do not show signs of physical injuries.
 {¶ 18} Testifying for the defense were Appellant; Brandy Bortner, Appellant's daughter; and Michael Ray, Appellant's landlord. Appellant denied that he raped K.A., and stated that he did touch her in any sexual manner. Ray testified that Tina contacted him a few times to inquire about purchasing the house she and Appellant were renting. Brandy testified that while she lived at the house, she spent many nights away. She stated that one day she discovered that someone had taken a hair clip from her bedroom; she later discovered that C.A. had taken it, and C.A. returned it to her. On another occasion, Brandy found $20 missing from her room. She did not question C.A. about the missing money, but Brandy did state that C.A. and her friend came home from the store with a bag of candy and snacks they had purchased at the store.
 {¶ 19} After a careful review of the testimony, we cannot say that the jury lost its way and created a manifest miscarriage of justice when it found Appellant guilty of rape and gross sexual imposition. This is not a case where the evidence weighs heavily in favor of Appellant. Moreover, the mere fact that only one witness for the prosecution could provide testimony as to each element of the crime does not, in and of itself, indicate that the convictions are against the manifest weight of the evidence. Appellant's fourth assignment of error is overruled.
 Third Assignment of Error
"The appellant was denied a fair trial as a result of prosecutorial misconduct."
 {¶ 20} In his third assignment of error, Appellant argues that he was denied a fair trial due to prosecutorial misconduct because (1) during closing argument, the prosecutor expressed his personal belief and misstated facts and (2) it appeared from the testimony of the victim and her sister that they had been coached as witnesses.
 {¶ 21} Appellant first argues that during closing argument, the prosecutor expressed his personal belief and misstated various facts. Appellant also argues that the prosecutor "coached" two witnesses — the victim and her sister. Appellant did not object during any of the prosecutor's statements in closing argument, nor did he raise the issue of coaching the witnesses during the proceedings in the trial court.
 {¶ 22} An appellate court generally will not consider as error any issue a party was aware of but failed to bring to the trial court's attention. Failure to object at the trial court level, when the issue is apparent at that time, generally constitutes a waiver of that issue, and therefore the issue need not be heard for the first time on appeal. Statev. Awan (1986), 22 Ohio St.3d 120, syllabus; see, also, In re M.D.
(1988), 38 Ohio St.3d 149, 150. Accordingly, we will not review Appellant's argument that he was denied a fair trial due to prosecutorial misconduct.
 {¶ 23} Appellant's third assignment of error is overruled.
 First Assignment of Error
"Appellant was denied of [sic] his right to effective assistance of counsel by trial counsel's numerous erroneous acts and omissions, in contravention of the sixth and fourteenth amendments to the united states constitution, and article one, section ten of the ohio constitution."
 {¶ 24} In his first assignment of error, Appellant argues that he was denied his right to effective assistance of counsel in violation of the Sixth and Fourteenth Amendments to the United States Constitution and Article I, Section 10, of the Ohio Constitution. He asserts that counsel was ineffective because counsel (1) admitted the conduct at issue in his opening statement; (2) failed to prepare properly for trial by failing to review statements of Appellant, failing to prepare defense witnesses, and failing to discover the opinions of the prosecution's expert witnesses; (3) failed to object to leading questions and questions eliciting prejudicial hearsay answers on direct examination of the alleged victim, her mother, her sister, her sister's friend and the friend's father; (4) failed to object to the qualifications of Detective Warfield as an expert or to his testimony in general; (5) failed to object to the qualifications of Dr. Wynn as an expert and to her testimony that was outside the scope of her expert report; and (6) failed to object to improper comments and misstated facts made by the prosecutor during closing argument.
 {¶ 25} The Sixth Amendment guarantees the right to effective assistance of counsel to each defendant. Courts use a two step process in determining whether a defendant's right to effective assistance of counsel has been violated.
"First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the `counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Strickland v. Washington (1984),466 U.S. 668, 687, 80 L.Ed.2d 674.
 {¶ 26} In order to demonstrate prejudice, "the defendant must prove that there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different."State v. Bradley (1989), 42 Ohio St.3d 136, paragraph three of the syllabus. "An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." Strickland, 466 U.S. at 691.
 {¶ 27} The court must analyze the "reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." Id. at 690. First, the defendant must identify the acts or omissions of his attorney that he claims were not the result of reasonable professional judgment. Then, the court must decide whether counsel's conduct fell outside the range of that which is considered professionally competent. Id. There is a strong presumption that counsel's performance was adequate. State v. Smith (1985),17 Ohio St.3d 98, 100. An appellate court may analyze the prejudice prong of the Strickland test alone if such analysis will dispose of a claim of ineffective assistance of counsel on the ground that the defendant did not suffer sufficient prejudice. State v. Loza (1994), 71 Ohio St.3d 61,83.
 {¶ 28} Appellant first asserts that counsel was ineffective for admitting the conduct in issue in opening statement. During opening statement, counsel for Appellant stated:
"Now, I believe this second count, gross sexual imposition, the evidence will show that she is going to say that he touched her breasts. She's going to say again, from January to August, seven months, but doesn't remember it, the date. I believe the evidence will show you don't remember because it never happened. And in order for this Prosecutor to prove that case, he has to prove — excuse me — he has to prove that there was gratification, either on the part of this Defendant or her, and I believe the evidence will show that she — if she said it happened, she was not happy that it happened, so couldn't be gratification to her. I believe the evidence will show that he had never had an arousal when this happened, he got no enjoyment out of it. I believe this never happened. Not what she's claiming and what the Prosecutor is claiming."
 {¶ 29} Defense counsel then went on to repeat that the evidence would show that Appellant was innocent. In arguing that counsel was ineffective for admitting the conduct in issue, Appellant has taken one statement out of context. A review of the opening statement indicates that defense counsel expressed the theory that Appellant did not commit these acts. Moreover, the trial court instructed the jury that "opening statements are not evidence, but they are a chance for the lawyers to tell you what they think the evidence will be." Counsel was not ineffective for admitting the conduct at issue during opening statements. Further, Appellant does not demonstrate how the verdicts would be different, but for this statement of counsel; thus, he cannot demonstrate prejudice as to this alleged error.
 {¶ 30} Appellant next asserts that counsel was ineffective for failing to prepare adequately for trial. Appellant argues that counsel failed to review Appellant's statements, failed to prepare defense witnesses, and failed to discover the opinions of the prosecution's expert witnesses. Defense counsel indicated to the court that while he asked for the appellant's statement during discovery, all he received was a blank videotape. The record reveals that the court granted a continuance of the trial before any testimony was heard in order for counsel to review the tape of Appellant's interview with police. The trial court inquired if there were any further motions as a result of the viewing, and defense counsel mentioned redacting parts of the tape which referred to a polygraph test and voice stress analysis. No requests for further continuances were made, and Appellant has not argued that the verdict would have been different had defense counsel reviewed the tape sooner. Therefore, Appellant cannot demonstrate any prejudice resulting from counsel's failure to review the tape earlier.
 {¶ 31} In the hearing on his motion for a new trial, Appellant testified that defense counsel's secretary asked him to contact his witnesses because they had not been subpoenaed. Appellant admitted that the witnesses had been interviewed by defense counsel prior to the trial. He further admitted that all of the witnesses he wanted called to testify on his behalf had, in fact, testified. He also stated that his theory of defense had been presented to the jury, and nothing was kept from the jury with regard to his theory that Tina was trying to get Appellant out of the house so that she could purchase it or that the victim was making up the allegations because her sister stole a hair clip and/or money from Appellant's daughter. Appellant has not demonstrated that counsel was ineffective for failing to interview defense witnesses.
 {¶ 32} Appellant next challenges defense counsel's failure to object to leading questions and questions eliciting prejudicial hearsay answers during the direct examination of the alleged victim, her mother, her sister, her sister's friend and the friend's father. Appellant does not point to any particular question or answer, nor does he demonstrate how he was prejudiced by counsel's failure to object.
 {¶ 33} With respect to expert witnesses, Appellant alleges that defense counsel failed to discover the opinions of the prosecution's expert witnesses prior to trial, failed to object to Detective Warfield's testimony in its entirety because he had not been listed on the State's witness list, and failed to object to the testimony of Dr. Wynn that was outside the scope of her expert report. Appellant also argues that counsel failed to discuss the possibilities of hiring his own expert to contradict the opinions offered by Detective Warfield and Dr. Wynn.
 {¶ 34} As previously noted, Detective Warfield and Dr. Wynn both testified as to their experiences with child sexual abuse victims. Specifically, their testimonies related as to how children have difficulties relating days and times of events and also as to their experiences concerning delayed disclosure of abuse. Defense counsel had a full opportunity to cross-examine both of these witnesses, and the jury had the opportunity to determine the credibility of these witnesses. SeeState v. DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus. Appellant cannot demonstrate that the use of his own expert would have resulted in a different outcome; thus, he has failed to demonstrate any resulting prejudice from the failure of counsel to hire an expert.
 {¶ 35} During the hearing on Appellant's motion for a new trial, Appellant testified that the names of Detective Warfield and Dr. Wynn were provided to him and counsel in advance of the trial. Therefore, Counsel was not ineffective for failing to object to Detective Warfield's testimony on the basis that his name had not been provided prior to trial. We also find that counsel was not ineffective with regard to failing to object to Dr. Wynn's testimony that was outside the scope of her report. Dr. Wynn gave her opinion concerning the absence of physical injuries and regarding delayed disclosure in children. The prosecution then began asking her questions concerning her opinion as to whether she thought the victim was abused. Contrary to Appellant's contention, defense counsel did object, and the court sustained the objection, cautioning the prosecutor that the expert would not be permitted to render an opinion as to whether she believed that the child had been abused. Defense counsel was not ineffective because he actually did object to the testimony that went beyond the expert report, and the objection was sustained.
 {¶ 36} Finally, Appellant asserts that counsel was ineffective for failing to object to various comments made by the prosecutor during closing argument. The prosecution is entitled to wide latitude in closing arguments. State v. Treesh (2001), 90 Ohio St.3d 460, 466. However, the prosecutor's duty is to avoid going beyond the evidence that is before the jury in order to obtain a conviction. State v. Smith (1984),14 Ohio St.3d 13, 14. An appellate court views the state's closing argument in its entirety to determine whether the defendant was prejudiced by the prosecutor's remarks. Treesh, 90 Ohio St.3d at 466.
 {¶ 37} Prior to closing arguments, the trial court instructed the jury as follows:
"Now, please remember that the closing statements by the lawyers are not evidence. It is an opportunity for each lawyer to summarize what they believe the evidence was and how they feel it supports their respective case."
 {¶ 38} As the court was instructing the jury before deliberations, the court repeated that "the opening statements and closing arguments by Counsel are designed to assist you, but they are not evidence." The jury is presumed to have followed the trial court's instructions. State v. Raglin (1998), 83 Ohio St.3d 253, 264. Accordingly, we cannot say that Appellant was prejudiced by defense counsel's failure to object during the prosecutor's closing argument.
 {¶ 39} Appellant has failed to demonstrate that he was denied his right to effective assistance of counsel. Accordingly, his first assignment of error is overruled.
 Second Assignment of Error
"The trial court erred in allowing expert testimony on the matters of the lack of physical evidence and the victim's `delayed disclosure' as such testimony was irrelevant, within the understanding of the jury, not sufficiently established and highly unfairly prejudicial."
 {¶ 40} In his second assignment of error, Appellant asserts that the trial court erred when it admitted the expert testimony of Dr. Mary Wynn and Detective Ryan Warfield. Appellant asserts that he had no notice that Detective Warfield would testify at all. Appellant also asserts that the testimony of both witnesses was inadmissible because it was not proper expert testimony.
 {¶ 41} We discussed Appellant's argument that Detective Warfield was not listed on the prosecution's witness list in a prior assignment of error, and we will not address it again. Appellant asserts that the admission of the expert testimony of Detective Warfield and Dr. Wynn is plain error.
 {¶ 42} "Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the [trial] court." Crim.R. 52(B). Crim.R. 52(B) places three limitations on the decision of a reviewing court to correct an error despite the absence of a timely objection at trial. State v. Barnes (2002), 94 Ohio St.3d 21,27. "First, there must be an error, i.e., a deviation from a legal rule." Id., citing State v. Hill (2001), 92 Ohio St.3d 191, 200. "Second, the error must be plain. To be `plain' within the meaning of Crim.R. 52(B), an error must be an `obvious' defect in the trial proceedings." Id., citing State v. Sanders (2001), 92 Ohio St.3d 245, 257. "Third, the error must have affected `substantial rights.'" Id. "Affecting substantial rights" under a plain error analysis means that the court's error must have affected the outcome of the trial. Id. Plain error is defined as "error but for the occurrence of which it can be said that the outcome of the trial would have clearly been otherwise." State v. Sanders (May 17, 2000), 9th Dist. No. 19783, at 3. The Ohio Supreme Court has recognized that the plain error doctrine should be applied sparingly and only when necessary to prevent a clear miscarriage of justice. Id., citing Statev. Wolery (1976), 46 Ohio St.2d 316, 327.
 {¶ 43} The trial court has broad discretion in the admission and exclusion of evidence. State v. Hymore (1967), 9 Ohio St.2d 122, 128. An appellate court will not disturb evidentiary rulings absent an abuse of discretion. Id. An abuse of discretion signifies more than merely an error in judgment; instead, it involves "perversity of will, passion, prejudice, partiality, or moral delinquency." Pons v. Ohio State Med. Bd.
(1993), 66 Ohio St.3d 619, 621. When applying the abuse of discretion standard, an appellate court may not substitute its judgment for that of the trial court. Id.
 {¶ 44} Evid.R. 702 provides:
"A witness may testify as an expert if all of the following apply:
"(A) The witness' testimony either relates to matters beyond the knowledge or experience possessed by lay persons or dispels a misconception common among lay persons;
"(B) The witness is qualified as an expert by specialized knowledge, skill, experience, training, or education regarding the subject matter of the testimony;
"(C) The witness' testimony is based on reliable scientific, technical, or other specialized information. * * *"
 {¶ 45} A determination that a witness is qualified to testify as an expert is within the sound discretion of the trial court. State v.Maupin (1975), 42 Ohio St.2d 473, 479.
 {¶ 46} Both experts testified as to their respective experience in dealing with child victims of sexual abuse. Specifically, both testified about the difficulties children have with time and the occurrence of delayed disclosure. The specialized knowledge of Dr. Wynn, as a family practitioner, and Detective Warfield, by virtue of having worked with abuse victims, could have assisted the jury in this matter. Delayed disclosure and a child's difficulties in relating time are not, as counsel asserts, matters within the common knowledge of the jury. It was not plain error for the trial court to admit the testimony of Detective Warfield and Dr. Wynn as experts. Appellant's second assignment of error is overruled.
 Fifth Assignment of Error
"The trial court erred in denying the motion for a new trial."
 {¶ 47} In his fifth assignment of error, Appellant argues that the trial court erred in denying his motion for a new trial. Appellant asserts that (1) he received ineffective assistance of counsel; (2) he was denied a fair trial due to prosecutorial misconduct; (3) the trial court admitted improper expert testimony; and (4) the verdicts are against the manifest weight of the evidence.
 {¶ 48} The decision to grant or deny a motion for a new trial is within the sound discretion of the trial court. An appellate court will not disturb a trial court's denial of a motion for a new trial absent an abuse of discretion. State v. Barnett, 9th Dist. No. 21060, 2003-Ohio-965, at ¶ 57, citing State v. Schiebel (1990),55 Ohio St.3d 71, paragraph one of the syllabus. An abuse of discretion is more than merely an error of judgment; it connotes a decision that is unreasonable, arbitrary, or unconscionable. Berk v. Matthews (1990),53 Ohio St.3d 161, 169. When applying the abuse of discretion standard, an appellate court may not substitute its judgment for that of the trial court. Id.
 {¶ 49} Each of Appellant's assertions has already been addressed. We have already determined that these arguments lack merit; therefore, we cannot say that the trial court abused its discretion when it denied Appellant's motion for a new trial based on these arguments.
 {¶ 50} Appellant's fifth assignment of error is overruled.
 III. {¶ 51} Appellant's assignments of error are overruled. The judgment of the Lorain County Court of Common Pleas is affirmed.
Judgment affirmed.
BATCHELDER, J. CONCUR