2021 IL App (2d) 190742-U
No. 2-19-0742
Order filed September 9, 2021

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(l).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Kane County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 17-CF-1536 |
| KAREEM M. SOLOMON-BEY, | ) ) | Honorable Kathryn D. Karayannis, |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE BRENNAN delivered the judgment of the court.
Justices Hudson and Birkett concurred in the judgment.

**ORDER**

¶ 1   *Held*: The plain-error rule did not excuse forfeiture of claim that defendant's confrontation rights were violated when the State's forensic expert testified as to the conclusions of a nontestifying forensic expert that a substance produced by the defendant during a controlled buy was cocaine. Though it was error to allow the testimony without the ability to cross-examine the authoring expert, there was sufficient circumstantial evidence that the substance was cocaine such that the error was harmless.

¶ 2   Following a jury trial, defendant, Kareem M. Solomon-Bey, was convicted of three counts of unlawful delivery of a controlled substance (720 ILCS 570/401(d) (West 2016)) and sentenced to three concurrent four-year terms of probation. Defendant timely appeals. Regarding one of the

counts, he contends that he was deprived of his right to a fair trial where he could not confront the expert who prepared the laboratory test result used to convict him. We affirm.

¶ 3                                    I. BACKGROUND

¶ 4     Defendant was charged with delivering cocaine on four occasions: December 8, 2016; December 13, 2016; December 20, 2016; and January 4, 2017. All four transactions were between Benjamin Williams, a confidential informant working with the Elgin Police Department, and a man Williams knew as "Twin." He later identified "Twin" as defendant. For each transaction, Williams wore a recording device, or "wire." The device recorded only video, but no audio for the December 8, 2016, transaction; it recorded audio and video of the remaining transactions.

¶ 5     Defendant represented himself at trial. Williams and several police officers described the four transactions as follows. On December 8, 2016, Elgin Police Department detectives Marcy Kogut and Adam Arnold met with Williams, searched him, and gave him $100 in prerecorded funds to purchase cocaine. In front of Kogut, Williams called a phone number. Defendant answered, and they arranged a meeting. Kogut and Arnold dropped Williams off near Center and Cherry Streets, where he had arranged to meet defendant. Williams testified that defendant later drove up in a Buick LeSabre. Williams got into the car and gave defendant the $100. Defendant handed Williams a plastic bag containing a substance that Williams testified was cocaine. A short time later, Williams got out of the car, and defendant drove away. When Kogut and Arnold picked Williams up, he handed the bag to Kogut.

¶ 6     On December 13, 2016, Williams called the same number and arranged to purchase $100 worth of crack cocaine from defendant. Kogut and Lieutenant Chris Jensen met with Williams, searched him, and gave him $100 to purchase cocaine. After Kogut dropped Williams off near Center and Cherry Streets, defendant drove up in the LeSabre. As before, Williams got into the

car and gave defendant the $100. Defendant gave him a plastic bag of a white substance that Williams testified was cocaine. Williams then exited the car. When Kogut picked him up after the exchange, Williams gave her the bag. Two surveillance officers identified defendant as the driver of the LeSabre.

¶ 7   On December 20, 2016, Williams again called the same number in front of Kogut and arranged to buy $150 worth of crack cocaine. Detective Mike Martino searched Williams before he dropped Williams off to meet with defendant. Shortly after they dropped him off, Williams called Kogut and told her that she forgot to give him the money to buy the drugs. Kogut and Martino drove back to the area and gave Williams $150. Thereafter, defendant arrived in the LeSabre and Williams got in the car. Once inside, Williams gave defendant the money and defendant gave Williams "some crack" in a plastic bag. After that, Williams got out of the car and waited for Kogut to pick him up. When Kogut and Martino arrived, Williams got into the car and handed Kogut the bag.

¶ 8   On January 4, 2017, Williams again called the same number in front of Kogut and arranged to buy crack cocaine from defendant for $150. Sergeant Mark Whaley searched Williams and Kogut gave him $150. Kogut and Whaley dropped Williams off near Center and Cherry Streets. As before, defendant drove up in the LeSabre. Williams got in and gave defendant the money. Defendant gave Williams what he testified was crack cocaine in a plastic bag. Williams then left the car. Kogut and Whaley returned and picked up Williams. Williams got into the car and gave the bag to Kogut.

¶ 9   The State also called Edward McGill and Martin Skelcy, both forensic scientists with the Illinois State Police. Defendant accepted each as an expert in the testing and identification of controlled substances.

¶ 10   McGill testified that he analyzed the substance in the bag Williams gave Kogut on January 4, 2017.  The substance weighed 0.9 grams and tested positive for cocaine.

¶ 11   Skelcy testified that he analyzed the substances from the controlled buys on December 8, 2016, and December 13, 2016.  The former weighed 0.3 grams, while the latter weighed 0.7 grams.  Both tested positive for cocaine.

¶ 12   Skelcy further testified that he had reviewed a report from Sara Anderson, another state forensic scientist.  Defendant interjected a hearsay objection, which the court overruled.  Skelcy testified that Anderson had analyzed the substance obtained during the December 20, 2016, purchase.  Skelcy identified People's exhibit No. 30 as Anderson's report.  He noted that Anderson tested a "chunky powder" that weighed 0.8 grams.  She performed the same tests that Skelcy performed on the other two samples.  She reported that the gas-chromatograph-mass-spectrometer test was positive for cocaine.  Based on his training and experience, Skelcy agreed with Anderson's findings that the sample contained cocaine.

¶ 13   The State also called a digital forensics examiner, who linked the number Williams dialed to defendant's phone.

¶ 14   The jury found defendant not guilty of the count related to the December 8, 2016, sale, but found him guilty of the remaining counts.  The court sentenced him to three concurrent four-year terms of probation.  Defendant timely appeals.

¶ 15                                II. ANALYSIS

¶ 16   Defendant contends that, as to the December 20, 2016, sale, he was deprived of his right to confront witnesses when Anderson did not testify about her testing of the alleged cocaine.  He argues that, by any fair definition, Anderson's report was testimonial; therefore, his confrontation

rights were violated because she was unavailable at trial, and he did not have a prior opportunity to cross-examine her.

¶ 17    Defendant acknowledges that, although he contemporaneously objected to Skelcy's hearsay testimony about Anderson's report, he did not include the issue in a posttrial motion, thus forfeiting it.  However, he contends that we should review the issue as plain error.

¶ 18    The State responds that the report was not testimonial.  The State alternatively contends that, even if the report itself were testimonial, Skelcy's testimony about the report was admissible under Illinois Rule of Evidence 703, as the report merely formed the basis of his opinion that the substance contained cocaine.  The State finally contends that any error was harmless or that, under a plain-error analysis, any error did not amount to plain error.

¶ 19    To preserve a purported error for appeal, a defendant must object at trial and raise the issue in a posttrial motion.  *People v. Sebby*, 2017 IL 119445, ¶ 48.  The failure to do either results in forfeiture.  *Id.*  However, Illinois Supreme Court Rule 615(a) (eff. Jan. 1, 1967) provides that substantial or plain errors "may be noticed although they were not brought to the attention of the trial court."  *Id.*  Illinois courts have identified two instances when it is appropriate to do so: (1) when "a clear or obvious error occurred and the evidence is so closely balanced that the error alone threatened to tip the scales of justice against the defendant, regardless of the seriousness of the error," or (2) when "a clear or obvious error occurred and that error is so serious that it affected the fairness of the defendant's trial and challenged the integrity of the judicial process, regardless of the closeness of the evidence." *People v. Piatkowski*, 225 Ill. 2d 551, 565 (2007); see *People v. Herron*, 215 Ill. 2d 167, 186-87 (2005).  "Under both prongs of the plain-error doctrine, the defendant has the burden of persuasion." *People v. Hillier*, 237 Ill. 2d 539, 545 (2010).  The first

step in deciding whether plain error occurred is to determine if there was a clear or obvious error at all. *Sebby*, 2017 IL 119445, ¶ 49.

¶ 20     In *Crawford v. Washington*, 541 U.S. 36, 59 (2004), the United States Supreme Court held that a "testimonial" statement is inadmissible against a defendant unless the declarant is unavailable and the defendant has had a prior opportunity for cross-examination. A statement is testimonial when its "primary purpose *** is to establish or prove past events potentially relevant to later criminal prosecution." *Davis v. Washington*, 547 U.S. 813, 822 (2006).

¶ 21     In three subsequent cases, the Court considered the application of *Crawford* to forensic testing. In *Melendez-Diaz v. Massachusetts*, 557 U.S. 305 (2009), the Court considered a Massachusetts procedure by which the results of chemical testing could be introduced by way of a forensic analyst's sworn certificate without the need for the analyst to testify. The Court held that the certificates in that case were testimonial and could not be introduced into evidence unless the analyst testified. *Id.* at 310-11.

¶ 22     Two years later, in *Bullcoming v. New Mexico*, 564 U.S. 647 (2011), the Court held that forensic test results could not be introduced through the "surrogate testimony" of a forensic analyst who did not personally perform or at least observe the test in question. *Id.* at 652. There, the defendant was charged with driving while intoxicated after a laboratory report showed that his blood-alcohol concentration (BAC) was well above the legal limit. *Id.* at 651. On the day of trial, the prosecution stated that it would not be calling the analyst who performed the test, Curtis Caylor, because he had recently been " 'put on unpaid leave.' " *Id.* at 655. Instead, the State offered the report as a business record through the testimony of another analyst, Gerasimos Razatos, who neither observed nor reviewed Caylor's analysis. *Id.* The Court noted that the "surrogate testimony of the kind Razatos was equipped to give could not convey what Caylor knew or

observed about the events his certification concerned, *i.e.*, the particular test and testing process he employed." *Id.* at 661. "Nor could such surrogate testimony expose any lapses or lies on the certifying analyst's part." *Id.* at 661-62. The Court continued:

> "Significant here, Razatos had no knowledge of the reason why Caylor had been placed on unpaid leave. With Caylor on the stand, Bullcoming's counsel could have asked questions designed to reveal whether incompetence, evasiveness, or dishonesty accounted for Caylor's removal from his workstation. Notable in this regard, the State never asserted that Caylor was 'unavailable'; the prosecution conveyed only that Caylor was on uncompensated leave. Nor did the State assert that Razatos had any 'independent opinion' concerning Bullcoming's BAC." *Id.* at 662.

¶ 23 Most recently, in *Williams v. Illinois*, 567 U.S. 50 (2012), a plurality of the Court held that the defendant's confrontation rights were not violated when an expert witness testified that a DNA profile prepared by an outside laboratory, Cellmark, matched a profile that the State produced from a sample of the defendant's blood. The lead opinion noted that, in *Melendez-Diaz* and *Bullcoming*, the reports at issue were "the equivalent of affidavits made for the purpose of proving the guilt of a particular criminal defendant at trial." *Id.* at 84. By contrast, the DNA profile "was not prepared for the primary purpose of accusing a targeted individual." *Id.* In other words, its "primary purpose \*\*\*, viewed objectively, was not to accuse [the defendant] or to create evidence for use at trial." *Id.* Rather, its purpose "was to catch a dangerous rapist who was still at large, not to obtain evidence for use against [the defendant], who was neither in custody nor under suspicion at that time." *Id.* Moreover, the report was admissible to the extent that it formed part of the basis of the testifying expert's opinion that the DNA profiles matched. *Id.* at 71-73. See Ill. R. Evid. 703 (eff. Jan. 1, 2011); *cf.* Fed. R. Evid. 703 (eff. Dec. 1, 2011).

¶ 24    The plurality opined that admitting the reports of nontestifying experts under these circumstances would not lead to widespread *Crawford* violations, as adequate safeguards exist:

> "First, trial courts can screen out experts who would act as mere conduits for hearsay by strictly enforcing the requirement that experts display some genuine 'scientific, technical, or other specialized knowledge [that] will help the trier of fact to understand the evidence or to determine a fact in issue.'  Second, experts are generally precluded from disclosing inadmissible evidence to a jury.  Third, if such evidence is disclosed, the trial judges may, and under most circumstances must, instruct the jury that out-of-court statements cannot be accepted for their truth, and that an expert's opinion is only as good as the independent evidence that establishes its underlying premises.  And fourth, if the prosecution cannot muster any independent admissible evidence to prove the foundational facts that are essential to the relevance of the expert's testimony, then the expert's testimony cannot be given any weight by the trier of fact."  [Citations omitted.] *Williams*, 567 U.S. at 80-81.

¶ 25    Justice Thomas provided the fifth vote.  In his separate concurrence, he agreed that Cellmark's report lacked the " 'formality and solemnity' " to be considered testimonial for purposes of the confrontation clause.  *Id.* at 103-04 (Thomas, J, concurring in the judgment) (quoting *Michigan v. Bryant*, 562 U.S. 344, 378 (2011) (Thomas, J., concurring in the judgment).  The dissent argued that a statement is testimonial if its primary purpose is "providing evidence."  *Id.* at 135 (Kagan, J., dissenting).  Because the DNA profile was intended to serve as evidence in a possible future criminal trial, it was testimonial.  *Id.*

¶ 26    Our supreme court has subsequently considered forensic evidence in the context of the confrontation clause.  In *People v. Leach*, 2012 IL 111534, ¶ 120, the court summarized its approach in the wake of *Williams*:

"When we must determine whether a forensic report is testimonial in nature, the *Williams* plurality instructs us to apply an objective test, looking for 'the primary purpose that a reasonable person would have ascribed to the statement, taking into account all of the surrounding circumstances.' [Citation.] If this inquiry reveals that the forensic report was 'made for the purpose of proving the guilt of a particular criminal defendant at trial' [citation], it is testimonial."

¶ 27    In *Leach*, the court held that an autopsy report was not testimonial and, therefore, its admission at the defendant's trial did not violate the confrontation clause. The court noted that (1) coroners are required by law to investigate all suspicious deaths regardless of whether they are being investigated as homicides; (2) autopsy reports are not generally prepared for the purpose of accusing a targeted individual, and (3) the report at issue did not specifically link the defendant to the crime. *Id.* ¶¶ 120-27. In *People v. Barner*, 2015 IL 116949, ¶¶ 63-64, our supreme court concluded that a DNA profile, much like the one at issue in *Williams*, was not testimonial.

¶ 28    In *People v. Lewis*, 2019 IL App (1st) 160864, ¶ 18, a state firearms identification expert testified that he "agreed with" the conclusions of another firearms examiner, who was on medical leave at the time of trial. The witness testified that his colleague properly followed all procedures. *Id.* ¶ 17. The appellate court concluded that this testimony violated the defendant's right to confront the expert who conducted the testing. *Id.* ¶ 37.

¶ 29    With the above cases in mind, we conclude that Anderson's report was clearly "testimonial." Although defendant was not yet in custody when Anderson tested the substance, defendant was being "targeted" for prosecution (*Williams*, 567 U.S. at 84), and the testing was done for the purpose of proving his guilt at a subsequent trial. Moreover, given the protocols for

forensic testing and Anderson's preparation of a formal, signed report, there was sufficient formality and solemnity to satisfy Justice Thomas's "testimonial" test.

¶ 30    The State insists that the use of the report was not testimonial because Anderson's report was not itself admitted into evidence.  Rather, the State argues that Skelcy reached an independent expert opinion that the substance tested contained cocaine based upon his review of Anderson's report. According to the State, this was permissible because the report contained the facts and data upon which he relied in rendering his own expert opinion.  See Ill. R. Evid. 703 (eff. Jan. 1, 2011) (allowing the admission into evidence of the facts or data upon which an expert bases an opinion). In arguing that this practice does not run afoul of the confrontation clause, the State also refers us to Justice Sotomayor's concurrence in *Bullcoming* where she observes, "We would face a different question if asked to determine the constitutionality of allowing an expert witness to discuss others' testimonial statements if the testimonial statements were not themselves  admitted as  evidence." *Bullcoming,* 564 U.S. at 673 (Sotomayor, J., concurring).

¶ 31    Defendant, however, disputes the State's characterization of Skelcy's testimony. According to defendant, Skelcy merely testified to Anderson's conclusions and stated that he agreed with her. We need not resolve this issue, however, given the State's alternative argument that any error in admitting Skelcy's testimony about Anderson's testimonial report was harmless. As the State correctly observes, if the error is harmless, it cannot amount to first-prong plain error. We combine the analyses, because "if an error was harmless, it most certainly cannot rise to the level of plain error." *Leach*, 2012 IL 111534, ¶ 141.

¶ 32    In considering whether a given error is harmless, a reviewing court may (1) focus on the error itself to determine if it might have contributed to the conviction; (2) examine the other, properly admitted evidence to see whether it overwhelmingly supports the conviction; or

(3) determine whether the improperly admitted evidence is merely cumulative of or duplicates properly admitted evidence. *Barner*, 2015 IL 116949, ¶ 71.

¶ 33 The State likens this case to *Leach*, where the court concluded that, even if the autopsy report in question were testimonial, allowing testimony about it was harmless error because the cause and manner of the victim's death were not at issue. The defendant admitted killing his wife but contended that he had a less culpable mental state than that for first-degree murder. *Leach*, 2012 IL 111534, ¶ 145. The State argues that, likewise, defendant here never disputed that the substance Williams received was cocaine; rather, he argued it was a case of mistaken identity. Thus, the State argues that the testimony about test results was harmless because it did not directly impact defendant's theory of defense. This argument, however, ignores the State's burden to prove beyond a reasonable doubt that the substance was in fact cocaine.

¶ 34 Defendant contends that, other than Skelcy's "surrogate expert testimony," the State presented no evidence that the substance delivered on December 20, 2016, actually contained cocaine. Thus, according to defendant, the State's evidence was insufficient to prove an element of the offense, rendering the evidence "closely balanced." Careful consideration of the record, however, belies this contention.

¶ 35 While the State must, of course, prove the identity of an alleged controlled substance, it need not do so through chemical testing. *People v. Eichelberger*, 189 Ill. App. 3d 1020, 1027 (1989) (citing *People v. Robinson*, 14 Ill. 2d 325, 330-31 (1958)). Rather, as in other cases, the State can prove its case by circumstantial evidence. *Id.* Evidence that will support a conviction includes:

" 'The exorbitant price paid for the small amount of substance; the fact it was a powder; that [the witness] had been a user and had had previous transactions in narcotics with the

[defendant]; * * * that [the witness] sold the substance to his customers as [a controlled substance] and that none of them "kicked" or complained ***.' " *Id.* at 1028 (quoting *Toliver v. United States*, 224 F.2d 742, 745 (9th Cir.1955)).

¶ 36    In *People v. Harrison*, 26 Ill. 2d 377, 379 (1962), the supreme court held that the trial court erred in admitting a stipulation that a chemical analyst would testify that a substance sold by the defendant tested positive for heroin.  However, the court determined that the error was harmless due to the circumstantial evidence that the substance was heroin.  The evidence was that the agent asked the defendant to get him a half ounce of " 'stuff' " (meaning heroin); the defendant replied that he would " 'try' "; the agent paid the defendant $80; and several hours later, the defendant delivered a half ounce of a "whitish" powder represented to be heroin.  *Id.* at 379-80; see also *People v. Budinger*, 230 Ill. App. 3d 279, 289-90 (1992) (evidence that defendant held out a white powdery substance as cocaine and sold it as such supported conviction).  While in both *Harrison* and *Budinger* there was evidence that the officers had field tested the substances, which did not occur here, there was still sufficient circumstantial evidence to sustain a conviction for the December 20 delivery.

¶ 37    The State presented evidence that Williams, a former crack addict, called defendant at least three times[1] and asked to purchase cocaine.  Each time, defendant agreed and, upon meeting Williams, handed him a substance in exchange for a substantial payment.  Skelcy's tests established that the substance defendant provided on two of these occasions was in fact cocaine.  Williams testified that the December 20, 2016, transaction was essentially the same process, price,

---

[1] We do not consider the evidence related to the December 8, 2016, sale for which defendant was acquitted.

and content as the other two: he got in defendant's car, put the money on the console, and defendant gave him what appeared to be cocaine.

¶ 38    Further, Williams, a former addict, testified without objection that the substance he received on December 20, 2016, was cocaine. "[L]ay or inexpert witnesses may have, by use, observation, or experience, sufficient knowledge of the appearance, odor, taste, characteristics and effect of intoxicating liquor or drug to enable them to identify and distinguish them." *Robinson*, 14 Ill. 2d at 332; see *People v. Olive*, 248 Ill. App. 220, 224-25 (1928). Moreover, where admitted without objection, all evidence, including opinion evidence, has the same effect and may be given the same weight as though it were legally admissible. *Bunch v. Rose*, 10 Ill. App. 3d 198, 209-10 (1973); see also *Olive*, 248 Ill. App. at 224-25. Thus, Williams' opinion, to which defendant did not object, can be considered as circumstantial evidence of the identity of the substance defendant delivered on December 20, 2016.

¶ 39    Taking all the relevant evidence into account, and discounting the Anderson testimonial evidence, we conclude that the circumstantial evidence was sufficient to prove that the substance delivered on December 20 by defendant was cocaine beyond a reasonable doubt. Accordingly, the error in the introduction of the Anderson testimonial hearsay was harmless and, accordingly, there was no first-prong plain error. See *Leach*, 2012 IL 111534, ¶ 141 (if an error was harmless, no plain error). To escape the application of harmless error to its plain-error analysis, defendant finally argues that his inability to cross-examine Anderson was second-prong plain error. A plain error under the second prong is "a clear or obvious error [that] is so serious that it affected the fairness of the defendant's trial and challenged the integrity of the judicial process, regardless of the closeness of the evidence." *Piatkowski*, 225 Ill. 2d at 565. In *People v. Patterson*, 217 Ill. 2d 407, 424-25 (2005), our supreme court held that confrontation clause violations are subject to a

harmless-error analysis. In other words, a confrontation clause violation requires an assessment of the strength of the evidence. Logically, then, it cannot be second-prong plain error, which mandates reversal regardless of the closeness of the evidence. The court in *Lewis* reached this same conclusion. *Lewis*, 2019 IL App (1st) 160864, ¶ 52.

¶ 40                                        III. CONCLUSION

¶ 41     We affirm the judgment of the circuit court of Kane County.

¶ 42     Affirmed.